# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RONALD ST. CYRE,** | ) | **CIVIL ACTION** |
| *Petitioner*, | ) | **NO. 24-1281** |
| | ) | |
| | ) | **JUDGE DARREL J. PAPILLION** |
| -VS- | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **MARCUS MYERS,** | ) | **EVA J. DOSSIER** |
| **Warden,** | ) | |
| **Correctional Center** | ) | |
| *Respondent.* | | |

_____

**AMENDED PETITION FOR RELIEF UNDER 28 U.S.C. § 2254
FROM CRIMINAL CONVICTIONS IN THE
PARISH OF ST. TAMMANY
STATE OF LOUISIANA**

_____

**Emily H. Posner**
**La. Bar No. 35284**
**6221 South Claiborne Avenue**
**Suite 556**
**New Orleans, Louisiana 70125**
**(504) 233-4237**
**ep@emilyposnerlaw.com**

*Counsel for Ronald St. Cyre*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... 2

TABLE OF AUTHORITIES ......................................................................................................... 4

PETITION FOR WRIT OF HABEAS CORPUS ......................................................................... 6

    Preliminary Statement Regarding Citation of State Court Record ................................................... 6

STATEMENT OF JURISDICTION ............................................................................................. 6

STATEMENT OF INCORPORATION ........................................................................................ 6

PROCEDURAL AND FACTUAL BACKGROUND BACKGROUND ..................................... 6

    A.    INTRODUCTION – Ronald St. Cyre's Social History ........................................................ 6
        i.    Childhood ............................................................................................................................ 7
        ii.    Fatherhood ........................................................................................................................... 9
        iii.    Current Family .................................................................................................................... 10
    B.    TRIAL ................................................................................................................................. 11
    C.    APPEAL .............................................................................................................................. 19
        i.    Juror Interviews ................................................................................................................. 20
        ii.    State Post-Conviction Relief (PCR) Application. .............................................................. 21
    C.    PETITION FOR A WRIT OF HABEAS CORPUS ........................................................... 21

LEGAL ARGUMENT ................................................................................................................. 22

    A.    THIS COURT'S HABEAS POWER .................................................................................. 22
    B.    CLAIM 1: The trial court erred in denying Mr. St. Cyre's motion to suppress ................. 23
    EVIDENCE BECAUSE THERE WAS NO REASONABLE SUSPICION TO CONDUCT A .................................... 23
    SEARCH, AND THE VEHICLE SEARCHED BELONGED TO A THIRD PARTY. ................................................. 23
        1. There was no reasonable suspicion to search Mr. St. Cyre's vehicle—even if it was Mr. St. Cyre's vehicle. 24
        2. The warrantless search of Mr. St. Cyre's cell phone does not cure the lack ..................... 26
        of reasonable suspicion. ..................................................................................................... 26
        3.    Moreover, although Mr. St. Cyre's status as a parolee diminished his ......................... 26
        individual privacy rights, the Government is not—and should not—be .............................. 26
        granted carte blanche to conduct searches of property belonging to third parties. ............ 26
        4.    No valid consent was given to the search of the vehicle ................................................ 28
    C.    CLAIM 2: The trial court erred when it denied Mr. St. Cyre's motion to suppress ........... 30
    HIS STATEMENT TO AGENT EVERLY BECAUSE MR. ST. CYRE WAS NOT PROPERLY MIRANDIZED BEFORE HIS CUSTODIAL
    INTERROGATION WITH AGENT EVERLY. ............................................................................................... 30
    D.    CLAIM 3: Ronald St. Cyre Received Ineffective Assistance of Counsel ........................... 34
    THROUGHOUT HIS CRIMINAL PROCEEDING, INCLUDING HIS SENTENCING, IN VIOLATION OF HIS SIXTH AND FOURTEENTH
    AMENDMENT RIGHTS. ........................................................................................................................ 34
        1.    Relevant Law – Ineffective Assistance of Counsel ....................................................... 34
        2.    Richard Tonry's Failure to Object to the Admission of Improper Evidence ................. 36
    E.    CLAIM 4:  Ronald St. Cyre Was Denied Effective Assistance of Counsel in ................... 39
    VIOLATION OF HIS FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS AND EQUIVALENT PROVISIONS OF THE
    LOUISIANA CONSTITUTION AT HIS SENTENCING AND HABITUAL OFFENDER HEARING. ................................ 39
        1.    Relevant Law – Ineffective Assistance of Counsel ....................................................... 39
        2.    Relevant Law – Constitutionally Excessive Sentences. ................................................ 42
        3.    Mr. St. Cyre received ineffective assistance of counsel at his sentencing ................... 42
        hearing. .............................................................................................................................. 42
    F.    CLAIM 5: MR. ST. CYRE'S RIGHT TO DUE PROCESS UNDER THE UNITED STATES ..................... 45
    CONSTITUTION WAS VIOLATED BECAUSE HIS HABITUAL OFFENDER PLEA WAS TAKEN IN VIOLATION OF LOUISIANA LAW. 45
    G. CLAIM 6: MR. ST. CYRE DUD NOT HAVE A CONSTITUTIONALLY FAIR TRIAL DUE TO CUMULATIVE ERROR. ........................... 49

CONCLUSION ...............................................................................................................................49

# TABLE OF AUTHORITIES

**Constitutional Provisions**

La. Const. art. 1, § 13 ................................................................................................ 38
U.S. Const. amend. IV .......................................................................................... 22, 38
U.S. Const. amend. VIII ............................................................................................. 40

**Federal Statutes**

28 U.S.C. 2241(d) ....................................................................................................... 5
28 U.S.C. §§ 2254 ....................................................................................................... 5
28 U.S.C. § 2254(d) ................................................................................................... 22
28 U.S.C. § 2254(d)(2). ...................................................................... 22, 29, 45, 46, 48
28 U.S.C. § 2254(d)(1) ....................................................................... 22, 29, 45, 46, 48
28 U.S.C. § 2254(d)(1)(D) ......................................................................................... 20

**State Statutes**

La. R.S. § 14:95.1 ...................................................................................................... 10
La. R.S. § 15:529.1(D) ......................................................................................... 43, 44

**Cases**

*Day v. McDonough*, 547 U.S. 198 (2006) ................................................................. 20
*Frank v. Mangum*, 237 U.S. 309 (1915) ................................................................... 44
*Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76  (1919) .......................................... 46
*Florida v. Jardines*, 569 U.S. 1, 5 (2013) ................................................................ 25
*Garza v. Idaho*, 139 S. Ct. 738 (2019) .................................................................... 45
*Harrington v. Richter*, 562 U.S. 86 (2011) .............................................................. 21
*Hurtado v. California*, 110 U.S. 516 (1884) ............................................................. 44
*Kimmelman v. Morrison*, 477 U.S. 365 (1986) ........................................................ 27
*Katz v. United States,* 389 U.S. 347 (1967) ............................................................. 39
*Lockhart v. Fretwell,* 506 U.S. 364 (1993) ............................................................... 39
*Miranda v. Arizona*, 384 U.S. 436 (1966) ............................................................... 29
*Nero v. Blackburn*, 597 F.2d 991 (5th Cir. 1979) .................................................... 39
*Riley v. California*, 573 U.S. 373 (2014) .................................................................. 25
*Roe v. Flores-Ortega*, 528 U.S. 470 (2000) ............................................................. 45
*Rompilla v. Beard*, 545 U.S. 374 (2005) .................................................................. 22
*State v. Hampton*, 98-2605 (La. 05/28/99), 737 So. 2d 699 ..................................... 47
*State v. Harris*, 2018-1012, (La. 07/09/20), So. 3d, 2020 WL 3867207 ............. 39, 40
*State v. Harvey*, 159 La. 674 (1925) ......................................................................... 44
*Solem v. Helm*, 463 U.S. 277 (1983) ........................................................................ 40
*State v. Johnson*, 389 So. 2d 372 (La. 1980) ......................................... 34, 35, 36, 37, 44
*State v. Martin,* 427 So. 2d 1182 (La. 1983) ............................................................ 44
*State v. Royal*, 03-439 (La. App. 5 Cir. 9/30/03), 857 So. 2d 1167
*State v. Royal,* 03-3172 (La. 3/19/04), 869 So.2d 849 .............................................. 42
*State v. St. Cyre*, 2019-0034 (La. App. 1 Cir. 12/19/19), 292 So. 3d 88 ....... 18, 23, 37
*State v. Thomas*, 2012-1410 (La. 09/04/13), 124 So. 3d 1049 .................................. 39
*State v. Washington,* 491 So.2d 1337 (La. 1986) ...................................................... 38
*State v. White*, 517 So. 2d 461, 464 (La. App. 1st Cir. 1987) ................................... 44
*Strickland v. Washington,* 466 U.S. 668 (1984) .......................................... 33, 35, 38

*Tague v. Louisiana*, 444 U.S. 469 (1980)............................................................................... 30

*United States v. Chadwick*, 433 U.S. 1 (1977)....................................................................... 22

*United States v. Fields*, 483 F.3d 313 (5th Cir. 2007)........................................................... 47

*United States v. Jones*, 565 U.S. 400 (2012) .................................................................. 22, 26

*United States v. Neal*, 27 F.3d, 1035 (5th Cir. 1994) ........................................................... 48

*United States v. United States Gypsum Co.*, 438 U.S. 422, (1978)...................................... 47

*Wiggins v. Smith*, 539 U.S. 510 (2003) ......................................................................... 22, 39

*Williams v. Taylor*, 507 U.S. 362 (2000)...........................................................21, 23, 29, 45, 46, 48

**Other Authorities**

Cannabinoid Screen and Confirmation (Urine), U. of Rochester Med. Ctr.,
https://www.urmc.rochester.edu/encyclopedia/content.aspx?contenttypeid=167&contentid=cannabinoi
d_screen_urine (last accessed May 23, 2019)...................................................................... 24

## PETITION FOR WRIT OF HABEAS CORPUS

Comes now Petitioner, Ronald St. Cyre, through undersigned counsel, who respectfully submits this Petition for Relief pursuant to 28 U.S.C. §§ 2254 *et seq*., requesting that this Court issue a Writ ordering that his unconstitutional state conviction be vacated. This Petition for Relief follows his conviction and sentence in the Parish of St. Tammany, State of Louisiana, in Criminal Case No. 598-521 captioned as *State of Louisiana v. Ronald St. Cyre*.

**Preliminary Statement Regarding Citation of State Court Record**

Any reference to the State Court Record is cited as "R" followed by the page number. Mr. St. Cyre will update any cites to the full habeas record once it has been produced and filed by the State of Louisiana.

## STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction in this case. The conviction and sentence of Mr. St. Cyre occurred in St. Tammany Parish, Louisiana.[1]

## STATEMENT OF INCORPORATION

All facts pled herein go to all claims, and all claims, facts, exhibits, legal arguments, and authority of law previously pled in this action, whether in this Court or in any other, are hereby incorporated by reference.

## PROCEDURAL AND FACTUAL BACKGROUND BACKGROUND

A.   **INTRODUCTION – Ronald St. Cyre's Social History**[2]

---

[1] *See* 28 U.S.C. 2241(d).

[2] Mr. St. Cyre reserves the right to update with pincites his habeas petition to the state court record that will be produced by the State. Many of the Petitioner's cites are to his state post-conviction relief petition and the state trial court ruling on that matter, which will be produced by the State during this habeas proceeding.

**Mr. Ronald St. Cyre is almost 43 years old.  He is currently serving a 30 year flat and enhanced sentence for a non-violent offense.  All of Mr. St. Cyre's predicate criminal offenses used by the State to enhance his sentence are non-violence. This is a case of grave injustice that requires immediate intervention from this Honorable Court.**

*i.    Childhood*

Ronald St. Cyre was born on September 8, 1981 to Della St. Cyre and Ronald Vaughn.  He was the youngest child on his mother's side.[3]    Together, Della and Ronald had three children: Henry, Terrell and Ronald.[4]  Della had her first child when she was a teenager and was only eighteen by the time Ronald was born. *Id.*  Although a young mother, Della worked at Café Du Monde in New Orleans for many years, where she was one of the first Black employees.  *Id.* Earning only $100 a week, Della did not have many options for affordable housing and her family landed at the Fischer Housing Projects located in Algiers, Louisiana; an area notorious for poverty, gun violence, and police brutality since the 1970s.[5]   Della herself was also raised in the area by a single mother, Celina St. Cyre, who provided the best she could on her own.[6]

Following a series of tragedies, Della struggled with substance misuse throughout Ronald's childhood.[7]  The sound of gunshots was a part of the landscape of the projects and Ronald never felt safe in his own home.[8]

After a few years at the Fischer Projects, Della was able to "live on the outside [of the projects]" in a safer area off General De Gaulle where the majority of the neighborhoods were

---

[3]*See* St. Cyre's Application for Post-Conviction Relief (PCR), Exhibit B, p. 36. (Genevieve Hampson Report (Mar. 7, 2023).
[4] *Id*.
[5] *Id*.
[6] *Id*.
[7] *Id*. at 37
[8] *Id*. at 35.

white.[9]  When her sons Henry, Terrell, and Ronald went to grade school in the neighborhood, Della was told with surprise how smart and well-behaved her children were.[10]

Although the boys were often left alone while Della was at work, there was a security guard where they lived in a complex in the "safe" area of the Westbank.[11]  This stability, however, did not last long.  *Id.*  Della's mother's health began to decline.  *Id.*  Without the extra support she would occasionally receive from her mother, Della was no longer able to afford the rent and moved back to the Fischer Housing Projects.  *Id.*  After a series of drawn out health complications, Celina died in 1992, when Ronald was ten years old. *Id.*

The loss of her mother deeply impacted Della's ability to parent and due to her addiction to crack (cocaine) and marijuana during this time, she found herself on the street, forcing Ronald to bounce between family members, often being separated from his older brother Terrell.[12]

Between housing insecurity and constant disruption in living arrangements, Ronald attended at least ten elementary schools.[13]  Ronald struggled academically during this time and looking back, wished he would have been able to graduate high school but was focused solely on surviving during those years.[14]

Vacillating between sobriety and drug binges, Della continued to work minimum wage jobs and Ronald often went hungry when they would land back in her care.[15]  In addition to raising

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

himself, Ronald felt responsible for keeping both himself and his mother safe amidst what felt like a war zone in the Fischer Projects.[16]

Determined to regain control of her life, Della started attending Narcotics Anonymous meetings and without childcare, would bring her children to NA meetings.[17]  Although highly unconventional, attendants took a liking to Ronald's sweet disposition and when they would leave, Ronald would tell them "I love you, please come back."[18]

Sadly Della's track to sobriety was derailed when Ronald's oldest brother Henry was shot and killed at just 17 years old.[19]  On that day, while pulled over in his car to offer a friend a ride to his new job at Taco Bell, a person ran up and opened fire, shooting Henry in the head. Henry was a pillar of the family and beacon of a better life outside of the projects.[20]  He was an outstanding student with aspirations of going to medical school.  With his murder, Ronald lost his primary positive male role model.[21]

Ronald recalls this was another tragic turning point in his family, causing a ripple of grief through the household.[22]  No one was ever arrested or officially charged with Henry's homicide and after his death, although just a child at the time, Ronald's fear for his own and loved ones' safety escalated.[23]  Ronald was just fifteen years old and his primary concern became protecting his family.[24]

### ii.    Fatherhood

---

[16] *Id*.
[17] *Id*.
[18] *Id*.
[19] *Id*.
[20] *Id*.
[21] *Id*. at 37-38.
[22] *Id*.
[23] *Id*. at 37.
[24]  *Id*.

When Ronald was seventeen years old, he had his first child, a son given his namesake.[25] He recognizes now he was ill-equipped for fatherhood and had run-ins with the law.[26]   Despite these struggles, Ronald tried to make a living during this time to support his family and worked off-shore on delivery barges with his father Ronald Vaughn, who was a licensed tugboat captain with Denet Towing Company for twenty-five years.[27]

Ronald's second son Travis was born two years after Ronald Jr. and a third, Karon, four years later.[28]   Ronald did not know about Karon for eight years and although surprised, Ronald felt blessed when he discovered he had a third son.[29]   Despite legal troubles, Ronald has maintained cordial relationships with his children's mothers and although he is aware he fell short in many ways as a father, he has always had meaningful relationships with all of his children.[30]

### iii.   Current Family

Ronald met his wife Chelsea Cornin through a cousin and two years after they began dating, welcomed their first daughter Raegan in 2010.[31]   Brooklynn was born in 2012, and their youngest, Italy, came in 2017.[32]   Throughout the relationship, Ronald and Chelsea planned on moving to Atlanta, Georgia, where he had a job driving 18-wheelers lined up after earning his Class A CDL.[33] This plan was derailed, however, when on November 27, 2017, Ronald was shot several times in his home by unidentified persons in an attempted carjacking.[34]   Ronald, Chelsea, and their three

---

[25] *Id*. at 38.
[26] *Id*.
[27] *Id*.
[28] *Id*.
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] *Id*.
[33] *Id*.
[34] *Id*.

daughters had come home from shopping at Walmart when the men opened fire.[35]   Ronald was holding his youngest, Italy, who was only 4 months old and his other daughters had just walked into the apartment.[36]   Ronald panicked, put his infant daughter on the floor, and defaulted to old patterns of attempting to protect himself, which involved a firearm.[37]

After being shot multiple times, Ronald was taken by ambulance at University Medical Center for injuries including brain contusion and skull fractures with loss of consciousness, specified disorders of the brain, and several gunshot wounds to the left hip, left thigh, knee, and ankle.[38]   In total, medical records show he was shot five times.[39]   Ronald continues to suffer from complications with his leg and experiences memory loss and headaches.[40]

**B.     TRIAL**

Mr. St. Cyre was charged by a bill of information on February 5, 2018, with violating La. R.S. § 14:95.1 , to wit: possession of a firearm by a person convicted of a felony.[41]   On February 20, 2018, Mr. St. Cyre pleaded "not guilty."[42] Mr. St. Cyre thereafter filed standard pretrial motions.[43]

At the motions hearing, the State called Mr. St. Cyre's parole officer, Agent Steve Everly, who led the search that led to arrest.[44]   Dubiously, Agent Everly justified his search of Mr. St. Cyre's aunt's vehicle on the basis that Mr. St. Cyre tested positive for marijuana that day and that

---

[35] *Id*.
[36]  *Id*.
[37] *See id*. at 38-39.
[38] *Id*. at 38.
[39] *Id*. at 36.
[40] *Id*. at 36.
[41] R. at 25.
[42] R. at 1.
[43] R. at 2. Mr. St. Cyre filed: (1) Motion to Suppress Statements, (2) Motion to Suppress Evidence, (3) Motion for a Preliminary Examination, and (4) Motion for Discovery. *Id*; R. at 8.
[44] R. at 211:8-13; R. at 211:22-27.

Mr. St. Cyre was shot in November 2017.[45] The trial court denied both the Motion to Suppress

Statements, and Motion to Suppress Evidence.[46] Mr. St. Cyre objected to both of the trial court's

rulings on these motions.[47]

Then, on July 12, 2018, the State filed a Notice of Intent, which said that it intended to

introduce evidence of Mr. St. Cyre's gunshot wound.[48] The defense filed a motion *in limine* to

exclude this evidence.[49] Thereafter, on July 17, 2018, the State filed an Amended Notice of Intent

to Use Evidence of Other Crimes.[10]

The trial court ruled that the State was only allowed to introduce evidence that Mr. St. Cyre

was shot on November 5th.[50] The trial court denied the State's request to introduce evidence of

Mr. St. Cyre's drug test and "marijuana crumbs" in January, ruling that the evidence was more

prejudicial than probative.[51]

Additionally, Mr. St. Cyre filed requests for subpoenas duces tecum for records relevant to

the defense, which were issued, and a return date was set for July 11, 2018.[52] When the requested

---

[45]  R. at 215:21-23. Mr. St. Cyre also tested positive for benzodiazepine and oxycodone, but he
reported that he had prescriptions for benzodiazepine and oxycodone. R. at 24:17-24.

[46] R. at 8. The trial court also found probable cause. *Id.*

[47] *Id.*

[48] R. at 66. Previously, Mr. St. Cyre filed a Motion for Notice of State's Intent to Introduce
Louisiana Code of Evidence article 404(B) Evidence on June 6, 2018. R. at 39. This Motion was
granted on June 8, 2018. R. at 40.

[49] R. at 49. The Record appears to be missing the first pages of this Motion, and the State's
Notice of Intent is not in the Record except as an exhibit to Mr. St. Cyre's Motion. However, the
Memorandum in Support and attached exhibits can be found at R. at 49 through R. at 101.
Mr. St. Cyre argued that the information should not be allowed into evidence because no written
notice of intent to use that evidence was given to Mr. St. Cyre. R. at 49. Mr. St. Cyre also asserted
that the intended evidence was not relevant and more prejudicial than probative. R. at 50-63.

[50] R. at 106-107. The Amended Notice provided that the State intended to introduce evidence
that Mr. St. Cyre was involved in a shooting and evidence of the results of Mr. St. Cyre's drug
screen. *Id.*

[51] R. at 10; R. at 276:3-19.

[52] R. at 265:11-16. These requests are not found in the record, so the timing of the filings is
unclear. *See* R. at 239:19-20; R. at 250:14-17; R. at 265:6-9.

records were not produced on the return date, Mr. St. Cyre requested a continuance, which the trial court denied.[53]

Trial began on July 17, 2018, and concluded on July 19, 2018.[54] The State's first witness was Agent Gina Weems.[55] The State's second witness was Agent Steve Everly.[56] Agent Everly testified that he was responsible for supervising Mr. St. Cyre's parole.[57] During Agent Everly's cross-examination, Mr. St. Cyre noticed that Agent Everly was testifying from documents that were never provided to Mr. St. Cyre.[58] The trial court then ordered that Agent Everly produce these documents to Mr. St. Cyre.[59]

In compliance with the trial court's order, 87 new pages of documents were produced midway through Agent Everly's cross-examination.[60] The trial court recessed for lunch, and the parties were only given the lunch break to review the new discovery.[61] Agent Howell then testified

---

[53] R. at 265:6-10; R. at 266:8-18.

[54] R. at 10-17.

[55] R. at 12. Agent Weems testified that Mr. St. Cyre signed a document outlining his parole conditions, which included consent to search upon reasonable suspicion of a crime. R. at 459:2-13; R. at 460:22-26.

[56] R. at 12.

[57] R. at 463:8-11. Agent Everly's testimony and statements under cross-examination about the events of January 9, 2018, will be discussed, *infra*.

[58] Agent Everly was ordered to produce his records to Mr. St. Cyre before trial. R. at 534:21-25. Eleven pages had been produced to the trial court. R. at 534:21-31. The trial court released 8 of those 11 pages of records before trial and released the remaining 3 pages during Agent Everly's cross-examination. *Id.* The record does not contain information about the contents of the subpoenas duces tecum, the return and *in camera* inspection of the documents produced, or the trial court's decision to release some documents and not others. The record also does not contain copies of the produced documents.

[59] *See* R. at 533:32-534:12.

[60] R. at 534:32-535:17.

[61] R. at 535:13-20. The record contains no information about any discussions held about the parties' review of the newly produced records.

13

that he assisted Agent Everly in a vehicle search on January 9, 2018, and was responsible for finding the gun in Mr. St. Cyre's aunt's vehicle.[62]

The State's last witness, Agent Lousteau, was a surprise; the State did not include Agent Lousteau on their witness list.[63] Mr. St. Cyre objected to the State calling Agent Lousteau in its case-in-chief without prior notice, and the trial court overruled the defense's objection.[64]

The first witness for the defense was Mrs. St. Cyre, who testified about Mr. St. Cyre's work history since 2012.[65] The State began its cross-examination of Mrs. St. Cyre by asking Mrs. St. Cyre about "prior bad acts" of Mr. St. Cyre.[66] The parties then approached the bench. Mr. St. Cyre argued that Mrs. St. Cyre testified as to the facts—and did not offer opinion evidence.[67]

The trial court granted the State's Motion to Rebut in part and denied the Motion in part.[68] The trial court ruled that evidence about events before Mr. St. Cyre's 2012 release from prison and the "marijuana crumbs" was inadmissible.[69] However, the trial court also found that Mrs. St.

---

[62] R. at 589:17-590:5; R. at 590:23-29; R. at 15.

[63] R. at 602:23-28; R. at 15.

[64] R. at 602:23-32; R. at 614:19-20.

[65] R. at 15; R. at 620-30.

[66]  R. at 630:2-32. The State argued that it had the right to get into specific instances of bad acts because Mrs. St. Cyre's testimony was character evidence. *Id.* R. at 631:4-5; R. at 632:17; R. at 635:5-10; R. at 635:11-18. The State prepared a memorandum in support of its motion to rebut character evidence. R. at 645:20-26; R. at 16..

[67] R. at 646:21-28. The defense argued that Mrs. St. Cyre only testified to Mr. St. Cyre's work history since 2012. R. at 6317:7-10; R. at 637:13-25; R. at 647:9-15. The defense also asserted that the State waived its objections by failing to object to the testimony of Mrs. St. Cyre as it was elicited. R. at 649:14-24.

[68] R. at 16.

[69] R. at 651:2-4; R. at 651:5-10. The "marijuana crumbs" intended for introduction by the State were never tested. R. at 633:25-28.

Cyre's testimony was evidence of good character and thus rebuttable by the State under Article 404.[70] The defense objected to this ruling.[71]

The only other witness called by the defense was Priscilla Vaughn.[72] Ms. Vaughn is Mr. St. Cyre's aunt.[73] After Ms. Vaughn's testimony, the defense rested.[74]

On July 18, 2018, Mr. St. Cyre filed a Request for Special Jury Charge.[75] Mr. St. Cyre requested that the jury be instructed: (1) that he needed general intent to commit the charged offense; and (2) that he needed intent to possess a firearm if the firearm was merely in his presence and not on his person.[76] Mr. St. Cyre's trial counsel referred to these elements in opening arguments.[77] However, this request was not included in the jury instructions, and it is unknown whether Mr. St. Cyre objected to this omission.[78]

In its closing argument the State said, "[T]his is the whole picture[:] Shoot out in front of this man's house less than three months before the date of this offense holding his infant daughter and drops her."[79] Mr. St. Cyre objected that the State was testifying about facts not in evidence

---

[70] R. at 650:25-29.
[71] R. at 652:7-22. The defense again argued that Mrs. St. Cyre's testimony was not character evidence. *Id.*
[72] R. at 16.
[73] R. at 657:10-13. Ms. Vaughn testified that Mrs. St. Cyre borrowed Ms. Vaughn's car on January 9, 2018. R. at 657:14-18. Ms. Vaughn also produced her paperwork for the gun that she purchased and stated that she did not give the gun to Mr. St. Cyre. R. at 658:1-11; R. at 659:8-10; R. at 659:20-29; R. at 660:1-15. Ms. Vaughn's gun was the gun recovered from Ms. Vaughn's vehicle on January 9, 2018. R. at 658:22-28.
[74] R. at 16.
[75] R. at 112-13.
[76] *Id.*
[77] R. at 453:28-32.
[78] R. at 153; R. at 664:3-12.
[79] R. at 693:9-14.

and that the State's remarks were extremely prejudicial.[80]  The trial court overruled the objection, noting, "It's closing argument."[81]

During deliberations, the jury asked "if intent to possess has to be proven to prove possession."[82] In the alternative, the jury requested that the instruction regarding intent be read again.[83] In response, the trial court read a portion of the jury instructions.[84] On July 19, 2018, the jury found Mr. St. Cyre guilty as charged.[85] Mr. St. Cyre then requested that the jury be polled, and the jury's written verdict forms were filed in the record under seal.[86] Sentencing was set for July 31, 2018.[87] On July 26, 2018, Mr. St. Cyre filed a Motion for Post-Verdict Judgment of Acquittal and/or New Trial.[88] These motions were denied, and the defense objected to the denial.[89]

Mr. St. Cyre was sentenced to 15 years' imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.[90]  Mr. Tonry filed no sentencing memorandum on behalf of his client.  In addition, at Mr. St. Cyre's sentencing hearing, Mr. Tonry presented no mitigation evidence and called no mitigation witnesses.[91]

---

[80] R. at 693:20-25.
[81] R. at 693:28-29.
[82]  R. at 158.
[83] *Id*.
[84] R. at 711:32-713:10.
[85] R. at 17; R. at 160.
[86] R. at 17; R. at 161.
[87] R. at 17.
[88] R. at 162-170. The Motion argued that: (1) the State failed to establish that Mr. St. Cyre had actual or constructive possession of the firearm; (2) the trial court erred when it allowed the State to question Mrs. St. Cyre about evidence previously ruled inadmissible; and (3) the State presented misleading evidence and the jury was confused about whether the State needed to prove intent. *Id.*; R. at 18 (renewed motion for post-judgment acquittal and new trial filed on July 31st, 2018).
[89] *Id*.
[90] *Id*.
[91] *Id*. at 721-22; *See also* State PCR, Ex. D, Aff. Samuel H. Winston, ¶ 12.

The State then filed a Multiple Offender Bill of Information.[92] Initially, Mr. St. Cyre initially denied the allegations the Multiple Offender Bill of Information. Mr. St. Cyre's habitual offender hearing was scheduled for September 21, 2018.[93] Then on September 21, 2018, he admitted to the allegations in the Multiple Offender Bill of Information pursuant to a plea agreement.[94] The trial court deemed Mr. St. Cyre a second felony offender.[95] The trial court sentenced Mr. St. Cyre to 30 years' imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.[96] Mr. St. Cyre objected to the imposition of sentence without the benefit of parole.[97]

At this hearing, the trial court judge failed to inform Mr. St. Cyre of his statutory right to remain silent, his right to a hearing, and his right that the State must prove its allegation that he is a habitual offender prior to accepting a stipulation from Mr. St. Cyre that he was a habitual offender.[98] Mr. St. Cyre's attorney did not object or request that the Court explain Mr. St. Cyre's statutory rights prior to his stipulation.[99]  Again, Mr. Tonry failed to present any mitigation evidence or witnesses on behalf of his client at this sentencing proceeding.[100] The trial court then vacated Mr. St. Cyre's fifteen-year sentence and sentenced him to thirty years without the benefit

---

[92] *Id.* On August 1, 2018, Mr. St. Cyre denied in the allegations contained in the Multiple Offender bill of Information. R. at 19. Mr. St. Cyre filed a Response and Objections to the Habitual Offender Bill of Information, a Request for Discovery, and a Motion to Quash the Habitual Offender Bill of Information on August 2, 2018. R. at 174-83.
[93] *Id.* at 731.
[94] R. at 21; R. at 732:24-29. He also withdrew his Motion to Quash the same date. *Id.*
[95] R. at 21.
[96] *Id.*
[97] R. at 734:32-735:4.
[98] *Id.* at 733.
[99] *Id.*
[100] *I d.*; *also* PCR, Ex. D, ¶ 12.

of parole, probation or suspension of sentence pursuant to Louisiana's habitual offender statute.[101]

Mr. Tonry did not object that Mr. St. Cyre's sentence was constitutionally excessive.[102] In addition,

Mr. Tonry did not file a motion for reconsideration, arguing that a thirty-year sentence for a non-

violent offense was constitutionally excessive.[103]

Despite the plethora of witnesses who could have attested to Mr. St. Cyre's traumatic

childhood, extensive work history, and qualities as a parent, Mr. Tonry failed to conduct any kind

of mitigation investigation.[104] For instance, Mr. Tonry failed to contact several people who were

available to testify on Mr. St. Cyre's behalf regarding the excessiveness of a thirty-year sentence.

His adult son Ronald Carter, his wife Chelsea St. Cyre, his brother Terrell St. Cyre, his aunt Vernell

Miller, his cousin Lakeitcha Jackson and her husband Roy Jackson, and his cousin Shawanda

Vaughn were all available to testify.[105]   As indicated by these witnesses, no one from Mr. St.

Cyre's legal team contacted them regarding Mr. St. Cyre's sentence until they each spoke with

Genevieve Hampson.[106]

Because Mr. Tonry failed to present any mitigation evidence at Mr. St. Cyre's sentencing

proceedings, and failed to file a motion for reconsideration, his appellate counsel, Mr. Sam

Winston, was prohibited from raising an excessive sentence claim on appeal.[107]  Troubled by the

length of Mr. St. Cyre's sentence when he has no criminal history for violent or sexual offenses,

---

[101] R. at 733; *also* Exhibit E, Uniform Commitment Order.
[102] *Id*. at 733.
[103] *See* Ex. D at ¶ 11.
[104] Undersigned counsel is prepared to introduce Mr. Tonry's file to prove this point at an evidentiary hearing.  The size of the file precludes her from attaching it as an exhibit to this PCR.
[105] *See* PCR, Ex. G, Letters.
[106] *Id*.
[107] *See* PCR, Ex. D at ¶ 13.

18

Mr. Winston stated under oath that he would have brought an excessive sentence claim on Mr. St. Cyre's appeal if trial counsel had filed the requisite motions.[108]

## C.    <u>APPEAL</u>

Mr. St. Cyre's appellate counsel did not raise a claim that the trial court judge failed to properly inform Mr. St. Cyre of his statutory rights during his habitual offender proceedings, and stipulation.[109]  Mr. Winston testifies that he did not conduct any legal research on this issue.[110]

On August 29, 2018, Petitioner filed a timely notice of appeal and the First Circuit affirmed Petitioner's conviction and sentence.[111] In his appeal, Mr. St. Cyre raised the following claims:

1. The trial court erred in denying Mr. St. Cyre's motion to suppress evidence because there was no reasonable suspicion to conduct a search, and the vehicle searched belonged to a third party.

2. The trial court erred when it denied Mr. St. Cyre's motion to suppress his statement to Agent Everly because Mr. St. Cyre was not properly *Mirandized* before his custodial interrogation with Agent Everly**.**

3. The trial court erred in permitting the State to present prejudicial evidence without probative value to the jury after previously ruling such evidence inadmissible.

4. The trial court erred when it overruled Mr. St. Cyre's objection to the prosecutor's closing argument.

---

[108] *Id.* at ¶ 16.
[109] *See generally State v. St. Cyre*, 2019-0034 (La. App. 1 Cir. 12/19/19), 292 So. 3d 88.
[110] *See* Ex. D at ¶ 18.
[111] *See State v. St. Cyre*, 2019-0034 (La. App. 1 Cir. 12/19/19), 292 So. 3d 88.

5. There was insufficient evidence presented to convict Mr. St. Cyre of possession of a weapon by a convicted felon because the State failed to prove Mr. St. Cyre either constructively possessed the firearm or had the requisite intent to do so.

6. Mr. St. Cyre's conviction requires reversal because he was denied his constitutional right to a complete record of the proceedings in this case.

The First Circuit denied Mr. St. Cyre's appeal, and the Louisiana Supreme Court subsequently denied Petitioner's writ for supervisory review.[112]

## D. STATE POST-CONVICTION PROCESS

### i. Juror Interviews

Licensed investigator, Neha Nimmagudda, spoke with Ina Bodden on May 19, 2021.[113] She took a written statement from Ms. Bodden, which is attached to her affidavit as Exhibit 1.[114] In that statement, Ms. Bodden explains that she was a juror on Mr. St. Cyre's trial.[115]  Also in that statement, Ms. Bodden explains that the judge in Mr. St. Cyre's case came and spoke to the jurors in the jury break room.[116]  She also states that the judge gave the jurors instructions that they were supposed to find Mr. St. Cyre guilty or not guilty.[117]  Lastly she explains that neither Mr. St. Cyre's attorney, nor the case's prosecutor, came with the judge when he spoke to the jurors in the break room.

Similarly, Licensed investigator, Neha Nimmagudda, spoke with Lindsay Hoover on May

---

[112] *Id.*
[113] *See id.* (Aff. Neha Nimmagudda, ¶¶ 4, 6).
[114] *Id.* at ¶ 6.
[115] *Id.*
[116] *Id.*
[117] *Id.*

21, 2021.[118]  She took a written statement from Ms. Hoover which is attached to her affidavit as

Exhibit 2.[119]   In that statement, Ms. Hoover explains that after the defense and prosecution

presented their case, the judge dismissed the jury to deliberate.[120]  She states that the judge came

to the jury deliberation room and gave them instructions there.[121]

     *ii. State Post-Conviction Relief (PCR) Application.*
   Petitioner then filed a timely *Initial Application for Post-Conviction Relief* on August 20,

2021.  The Louisiana Supreme Court recently ruled against Mr. St. Cyre and his post-conviction

claims.   After several unopposed extensions due to the COVID-19 pandemic, Mr. St. Cyre's

deadline to supplement his PCR was extended several times without opposition from the State.

On March 7, 2023, Mr. St. Cyre filed a supplement to his PCR.  **The trial court judge never**

**ordered the State to file procedural objections or an answer to Mr. St. Cyre's PCR.**  It simply

summarily denied each of his claims on July 5, 2023. Mr. St. Cuye filed a timely Application for

Supervisory Review to the Court of Appeal, First Circuit. The First Circuit denied his writ

application without reason. He sought supervisory review to the Louisiana Supreme Court.  That

subsequently denied his writ application.

   This timely application for habeas corpus relief now follows:

**C.**  **PETITION FOR A WRIT OF HABEAS CORPUS**
   Mr. St. Cyre now files this Petition for a Writ of Habeas Corpus in order to preserve his

collateral claims for relief and to ensure timely filing of this application pursuant to 28 U.S.C. §

2254(d)(1)(D).   Under the Anti-Terrorism and Effective Death Penalty Act (hereinafter

"AEDPA"), habeas petitioners must file their petition for a *writ of habeas corpus* within one year

---

[118] *See id*. Ex.G at ¶¶ 4, 7.
[119] *Id*. at ¶ 7.
[120] *Id*.
[121]  *Id*.

(365 days) of the discovery of new evidence.[122] That limitation period is tolled during the pendency of the petitioner's state post-conviction proceedings.[123]

In this matter, the investigation and filing of Mr. St. Cyre's state post-conviction application has been delayed due to the ongoing adverse impacts from the COVID-19 Pandemic. Undersigned counsel is also experiencing personal challenges that require she have additional time to prepare the final habeas petition.  Undersigned counsel has communicated these challenges with opposing counsel, Mr. Matt Caplan, who has expressed that he has no opposition to Mr. St. Cyre filing an amended petition on May 24, 2024.

Therefore, in order to preserve his right to federal review, Mr. St. Cyre is filing this Habeas Petition, along with an Unopposed Motion to Stay and Hold his Petition for a Writ of Habeas Corpus in Abeyance until he can file an amended habeas petition.

**LEGAL ARGUMENT**

Mr. St. Cyre's constitutional rights to due process, a fair trial, and effective assistance of trial and sentencing counsel were violated during his criminal proceeding. Each of these errors both individually and cumulatively warrant relief from this Court.

## A.        THIS COURT'S HABEAS POWER[124]

Where, as here, an application for a writ of habeas corpus is governed by AEDPA, the threshold inquiry for this Court is whether the particular claim under federal habeas review "was adjudicated on the merits in State court proceedings."[125] For the purposes of AEDPA review,

---

[122] *See* 28 U.S.C § 2244(d)(1)(D).
    [123] *See, e.g., Day v. McDonough*, 547 U.S. 198 (2006).
[124] § 2254(d) does not create a "standard of review," but rather operates as a "limitation on relief." *Williams v. Taylor*, 507 U.S. 362, 412 (2000) (characterizing the provisions as a "constraint on the power of a federal habeas court to grant . . . the writ" in those cases in which the federal court has found constitutional error).
[125] 28 U.S.C. § 2254(d).

"[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[126] If the state court to which the claim was previously presented failed to resolve a claim on the merits, then § 2254(d) is inapplicable to the federal court's analysis, and the claim is reviewed *de novo*.[127]

The presentation of Mr. St. Cyre's habeas claims for relief will track the order in which they appeared in his appeal and subsequent state application for post conviction relief.

**B.     CLAIM 1:     The trial court erred in denying Mr. St. Cyre's motion to suppress evidence because there was no reasonable suspicion to conduct a search, and the vehicle searched belonged to a third party.**

This Honorable Court should grant Mr. St. Cyre habeas relief and vacate his conviction and sentence because the state trial court violated his constitutional rights when it denied Mr. St. Cyre's motion to suppress evidence seized from the vehicle in this case. First, there was no reasonable suspicion to search the vehicle. Second, the search was not of Mr. St. Cyre's vehicle; the vehicle belonged to a third party. Finally, no valid consent was given to the search of the vehicle.

The Fourth Amendment guarantees the right of all persons to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. A "vehicle" is an "effect" under the Fourth Amendment.[128]

---

[126] *Harrington v. Richter*, 562 U.S. 86, 99 (2011).
[127] *See, e.g., Rompilla v. Beard*, 545 U.S. 374, 390 (2005)8 ("Because the state courts found the representation adequate, they never reached the issue of prejudice, and so we examine this element of the *Strickland v. Washington*, [466 U.S. 668 (1984)] claim de novo[.]") (internal citations omitted); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("[O]ur review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.").
[128] *United States v. Jones*, 565 U.S. 400, 404 (2012) (citing *United States v. Chadwick*, 433 U.S. 1, 12 (1977)).

As discussed herein, the last reasoned state court decision concerning this claim was both "contrary to clearly established federal law,"[129]  as well as based on an "unreasonable determination of the facts in light of the evidence presented."[130] That decision from the Louisiana First Circuit simply stated "Agent Everly had reasonable suspicion, as well as probable cause, to search the vehicle and seize the gun that was in it. The trial court did not err or abuse its discretion in denying the motion to suppress the evidence."[131]  As well, the state court "unreasonably applied" the facts presented by Mr. Cyre in his appeal when it determined his Fourth Amendment rights were not violated.[132]

> 1. There was no reasonable suspicion to search Mr. St. Cyre's vehicle—even if it was Mr. St. Cyre's vehicle.

The State did not establish that the warrantless search of the vehicle in this case was reasonable. The evidence of Mr. St. Cyre's gunshot wound and positive drug screen had no connection to the vehicle. Additionally, because of the length of the time that had passed, there was no reasonable suspicion that evidence would be found in the vehicle.

Agent Everly decided to search without reasonable suspicion either that (1) marijuana would be found in Mr. St. Cyre's vehicle, or (2) a gun would be found in Mr. St. Cyre's vehicle before Agent Everly. The only fact that Agent Everly knew about Mr. St. Cyre's arrival in his office on January 9, 2018, was that Mr. St. Cyre's wife had driven him there.[133] Agent Everly did not have actual knowledge that the vehicle Mr. St. Cyre arrived in was still in the parking lot; he "assumed it was still out there."[134] Although Agent Everly viewed Mr. St. Cyre's cell phone and

---

[129] 28 U.S.C. § 2254(d)(1).
[130] *Id.* § 2254(d)(2).
[131] *St. Cyre,* 292 So. 3d at 101.
[132] *Williams v. Taylor,* 529 U.S. 362, 406 (2000)
[133] R. at 583:30-584:2.
[134] R. at 584:3-6.

observed a message that indicated a gun may be found in the vehicle, this only happened *after* Agent Everly made the decision to search Ms. Vaughn's car.[135]

At the motions hearing and again at trial, Agent Everly said he texted Agent Lousteau to inquire whether Agent Everly should search Mr. St. Cyre's car.[136] However, the only text that Agent Lousteau said that she received from Agent Everly was when he informed Agent Lousteau that "he found the gun."[137] When the State tried to clean up this testimony, Agent Lousteau again affirmed that she had no communications with Agent Everly via text before Agent Everly went to search the vehicle.[138]

Additionally, a positive drug screen does not give rise to reasonable suspicion that criminal activity is occurring—particularly for marijuana. A casual user of marijuana may test positive for marijuana up to 10 days after consumption.[139] Agent Everly neither testified that Mr. St. Cyre smelled like marijuana nor that he observed Mr. St. Cyre's behavior to indicate that Mr. St. Cyre was under the influence of marijuana. There was no suspicion—reasonable or otherwise—based on the facts in Agent Everly's possession that a search of the vehicle would reveal evidence of illicit drugs.

Similarly, there was no reasonable suspicion that Agent Everly would find a firearm in Mr. St. Cyre's vehicle. Although Agent Everly observed that Mr. St. Cyre was on crutches, the gunshot wound occurred in November—65 days before Mr. St. Cyre's office visit with Agent Everly. Agent Everly's testimony insinuating that Mr. St. Cyre was somehow evading Agent Everly should

---

[135] R. at 470:24-471:10.
[136] R. at 215:17-23; R. at 470:24-471:3.
[137] R. at 607:29-32.
[138] R. at 608:9-14.
[139] Cannabinoid Screen and Confirmation (Urine), U. of Rochester Med. Ctr., https://www.urmc.rochester.edu/encyclopedia/content.aspx?contenttypeid=167&contentid=cannabinoid_screen_urine (last accessed May 23, 2019).

not be credited.[140] Agent Everly did not feel it was necessary to search Mr. St. Cyre's house or vehicle immediately after the shooting. Incredibly, Agent Everly claims that such necessity arose 65 days later.

> ### 2. The warrantless search of Mr. St. Cyre's cell phone does not cure the lack of reasonable suspicion.

Before looking at Mr. St. Cyre's cell phone, Agent Everly already decided to search Ms. Vaughn's car without reasonable suspicion. There must be "intervening circumstances" that break the "causal connection" between an unlawful governmental action and subsequent search for a search to be cured of its illegal taint.   Additionally, the warrantless search of a cell phone is unconstitutional in absence of a warrant even when incidental to a lawful arrest.[141]

Not only did Agent Everly look at Mr. St. Cyre's phone without a warrant, Agent Everly actually went through other communications and images on the phone.[142] Because the search of Ms. Vaughn's vehicle was a foregone conclusion, the unconstitutional search of Mr. St. Cyre's cell phone is irrelevant. Moreover, the evidence obtained from the cell phone should have been excluded because the search was conducted without a warrant.

> ### 3.    Moreover, although Mr. St. Cyre's status as a parolee diminished his individual privacy rights, the Government is not—and should not—be granted carte blanche to conduct searches of property belonging to third parties.

---

[140] Despite previously testifying that he had no contact with Mr. St. Cyre or Mrs. St. Cyre in November 2017, Agent Everly documented a phone call with Mrs. St. Cyre on November 20, 2017. R. at 533:2-9. Moreover, Agent Everly told Mr. St. Cyre that someone from his office would be visiting his new residence. R. at 539:11-18. Agent Everly never instructed anyone to visit Mr. St. Cyre. *I*Agent Everly also testified that he went to Mr. St. Cyre's house on November 27, 2017, but Mr. St. Cyre was not there. R. at 542:5-13. Yet Agent Everly testified that he did not note his attempt to visit Mr. St. Cyre in any of his paperwork because "it wasn't relevant." R. at 542:20-25. But when Agent Everly went to visit Mr. St. Cyre on August 25, 2017, and Mr. St. Cyre was not at home, Agent Everly found *that* relevant enough to put in his report. R. at 543:2-16.

[141] *Riley v. California*, 573 U.S. 373, 386 (2014); *Katz v. United States*, 389 U.S. 347 (1967).

[142] R. at 257:28-258:8.

A search within the meaning of the Fourth Amendment occurs when the Government either (1) physically intrudes on a constitutionally protected area, or (2) violates an individual's reasonable expectation of privacy.[143] After the Supreme Court's ruling in *Katz*, courts routinely limited their inquiries as to whether or not the person alleging that a search occurred had a reasonable expectation of privacy and whether such search was reasonable.[144] However, *Jones* reaffirmed that a physical intrusion by the State onto private property for the purpose of obtaining information was and is a search within the meaning of the Fourth Amendment.[145]

Agent Everly testified that he did not know whose car he searched.[146] He did not run the license plate to find out who owned the car.[147] He did not check the registration of the car.[148] Agent Everly testified that the issue of vehicle ownership was determined by whatever vehicle a parolee was in.[149]

Agent Everly failed to do a basic inquiry and therefore possessed no reasonable belief that Ms. Vaughn's vehicle was actually Mr. St. Cyre's vehicle. Agent Everly did not know whether Mrs. St. Cyre was in possession of the car for longer than the trip to his office, and he did not ask. This is not to say that a warrantless search of a third party's property is always invalid. But based on these facts and circumstances—the car did not belong to Mr. St. Cyre, Agent Everly failed to investigate ownership of the vehicle, and had no interest in investigating the vehicle's ownership— the search of Ms. Vaughn's car was unreasonable.

---

[143] *Florida v. Jardines*, 569 U.S. 1, 5 (2013).
[144] *Jones*, 565 U.S. at 406.
[145] *Id.* at 404.
[146] R. at 556:17-19.
[147] R. at 556:20-21.
[148] R. at 556:26-27.
[149] R. at 558:3-5; R. at 558:12-14.

Because Agent Everly failed to do even a *de minimis* investigation, he cannot be in good faith. By Agent Everly's standards, a friend giving a parolee a ride, or a cab, or a bus—literally any third-party vehicle in which a parolee happens to be found—is the property of whichever parolee rode in it, and is therefore subject to search.  This cannot be construed as a good-faith mistake by Agent Everly.

Here, the vehicle searched belonged to neither Mr. St. Cyre nor Mrs. St. Cyre. The vehicle belonged to Ms. Vaughn. While there is a lesser expectation of privacy in a vehicle, parole officers trespassed when they entered Ms. Vaughn's car without attempting to perform the most cursory of investigations into the vehicle's ownership.

> 4.     *No valid consent was given to the search of the vehicle.*

If it is not sufficiently attenuated from the prior unlawful conduct, a subsequent consent to search does not cure the earlier violations, for it is fruit of a poisonous tree. Mrs. St. Cyre did not give valid consent to search Ms. Vaughn's vehicle. First, Ms. Vaughn's vehicle was already being searched when Mrs. St. Cyre gave her purported "consent." Second, Agent Everly threatened Mrs. St. Cyre, so her consent—if it could even be characterized as such—was not valid.

> a.    <u>The vehicle was already being searched when "consent" was given.</u>

Agent Howell testified that he began searching the vehicle while Agent Everly was speaking to Mrs. St. Cyre.[150]  Agent Everly did not engage in a long conversation with Mrs. St. Cyre. He told her that she would be handcuffed, implied that her baby would be taken away, then asked her where the gun was.

> b.    <u>Mrs. St. Cyre's statement to Agent Everly was not valid consent.</u>

---

[150]  R. at 590:23-25. Although Agent Everly was standing next to the rear bumper of the vehicle when Agent Howell was searching the vehicle, Agent Howell disclaimed any knowledge of the interaction between Agent Everly and Mrs. St. Cyre, testifying that he did not hear their exchange. R. at 474:29-31; R. at 600:26-31.

Agent Everly located the vehicle and asked Mrs. St. Cyre where the gun was.[151] Agent Everly did not Mirandize Mrs. St. Cyre nor did he obtain Mrs. St. Cyre's written consent to search the vehicle.[152] Agent Everly threatened that Mrs. St. Cyre would go to jail if she did not tell him where the gun was.[153] Although Agent Everly said that he did not tell Mrs. St. Cyre that he would arrest her, he acknowledges saying he "would put her in cuffs."[154] Agent Everly further threatened Mrs. St. Cyre that her baby would go into state custody.[155] After being threatened, Mrs. St. Cyre stated that there was a gun under the driver's seat.[156] Agent Everly interpreted this as consent to search the vehicle.[157]

Mrs. St. Cyre's statement to Agent Everly about the location of the gun cannot be construed as a valid consent to search. Importantly, Agent Howell testified that he was already searching the car when Agent Everly was talking with Mrs. St. Cyre. Mrs. St. Cyre's subsequent "consent to search" is not curative of Agent Howell's entry into the vehicle without Mrs. St. Cyre's consent— and definitely without Ms. Vaughn's consent. Mrs. St. Cyre described the location of the gun after Agent Everly threatened to "throw her in jail" and further threatened that her infant would be taken away from her. This conduct—although routine for Agent Everly[158]—was coercive and unconscionable. Even if Mrs. St. Cyre informed Agent Everly of the whereabouts of the gun before

---

[151] R. at 218:15-18.
[152] R. at 254:31-255:7.
[153] R. at 218:15-18.
[154] R. at 251:30-31.
[155] R. at 252:7-13. Agent Everly "clarified" that it was not a direct threat because he told Mrs. St. Cyre "that if she goes to jail, her baby will probably go into State custody." *Id.* However, during trial, Agent Everly changed his testimony to state that he would call the State to pick up Mrs. St. Cyre's child. R. at 567:21-27.
[156] R. at 255:13-15.
[157] R. at 255:16-18.
[158] R. at 252:7-13 ("[T]hat's something I tell them basically sometimes.")

the search commenced, Mrs. St. Cyre's statement was neither voluntary nor can it be construed as giving valid consent to search.

**C.**     **CLAIM 2: The trial court erred when it denied Mr. St. Cyre's motion to suppress his statement to Agent Everly because Mr. St. Cyre was not properly Mirandized before his custodial interrogation with Agent Everly**

Agent Everly started questioning Mr. St. Cyre without giving Mr. St. Cyre a *Miranda* warning.[159] This is undisputed. As discussed herein, the last reasoned state court decision concerning this claim was both "contrary to clearly established federal law,"[160] as well as based on an "unreasonable determination of the facts in light of the evidence presented."[161] As well, the state court "unreasonably applied" the facts presented by Mr. Cyre in his appeal when it determined his *Miranda* rights were not violated.[162]

While Agent Everly indicates that a short time elapsed between when questioning commenced and the reading of Mr. St. Cyre's rights, Agent Everly's testimony is not credible. The only documentary evidence shows that Mr. St. Cyre was arrested at 2:00 P.M. and advised of his rights at 2:00 P.M.[163] This means that Mr. St. Cyre waived his rights at precisely the same time as his arrest.[164] However, Agent Everly testified that Mr. St. Cyre finished giving his statement before he was arrested.[165]

As the United States Supreme Court famously held:

Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and

---

[159] R. at 221:14-21; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).
[160] 28 U.S.C. § 2254(d)(1).
[161] *Id.* § 2254(d)(2).
[162] *Williams v. Taylor*, 529 U.S. 362, 406 (2000)
[163] R. at 565:18-22; R. at 564:23-25.
[164] R. at 565:9-13.
[165]  R. at 565:14-19.

that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently.[166]

"A heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."[167] The State was unable to produce any evidence beyond Agent Everly's suspect testimony that Mr. St. Cyre was properly advised of his rights before his statement. Importantly, the State failed to establish that Mr. St. Cyre was properly *Mirandized*. Moreover, the testimony of the other State witnesses is unhelpful and contradictory. The State could not even establish who was in the room for Mr. St. Cyre's statement.[168]

The State did not meet its burden in showing that Mr. St. Cyre's confession was a knowing and intelligent waiver of his rights. Mr. St. Cyre's confession was not videotaped.[169] The audio of Mr. St. Cyre's confession was not recorded.[170]  Mr. St. Cyre did not sign a written confession.[171] And Agent Everly did not take notes simultaneously during Mr. St. Cyre's confession.[172]

It is impossible to determine from the record when, if ever, Mr. St. Cyre was properly *Mirandized*. Agent Everly admits that he started questioning Mr. St. Cyre without *Mirandizing*

---

[166] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[167] *Tague v. Louisiana*, 444 U.S. 469, 470 (1980).

[168] Agent Howell conveniently testified that he overheard Mr. St. Cyre make an incriminating statement. R. at 596:18-24. However, Agent Lousteau testified that she was present the entire time, and Agent Howell was not in the room for any portion of Mr. St. Cyre's statement. R. at 604:32-605:22; R. at 610:3-611:15. Agent Everly also testified that Agent Howell was not in the room. R. at 491:28-492:31. Agent Howell said that if Agent Everly testified that Agent Howell was never in the room, then Agent Everly was lying. R. at 596:22-24.

[169] *See generally,* R. at 241.

[170] *Id.*

[171] *Id.*

[172] *Id.*

him first.[173] At the motions hearing, Agent Everly testified that another agent, Agent Abadie, who just happened to be walking by, asked whether Mr. St. Cyre had been read his rights, so Agent Everly then read Mr. St. Cyre his rights.[174] Agent Lousteau contradicted Agent Everly on this point when she testified that no questioning occurred before Mr. St. Cyre was *Mirandized*.[175] In fact, Agent Lousteau's testimony is silent about any concerns about a *Miranda* warning being timely issued.[176]

The testimony of both agents conflicts with the official paperwork. Agent Everly testified that Mr. St. Cyre waived his rights simultaneous to his arrest.[177] The arrest report states that Mr. St. Cyre was arrested at 2:00 P.M.[178] The advice of rights form signed by Mr. St. Cyre notes that he was read his *Miranda* rights at 2:00 P.M.[179] This contradicted Agent Everly's previous testimony that Mr. St. Cyre was read his rights, *then* Mr. St. Cyre gave a statement, and *then* Mr. St. Cyre was arrested.[180] Agent Lousteau stated that Agent Everly left to fill out paperwork, returned to handcuff Mr. St. Cyre, and transported Mr. St. Cyre to jail after Mr. St. Cyre had already given a statement.[181]

Mr. St. Cyre supposedly waived his rights at the time of his arrest.[182] But Mr. St. Cyre was immediately transported to the jail upon his arrest.[183] The statements used at trial were taken from

---

[173] R. at 221:14-21.
[174] R. at 221:14-21.
[175] R. at 605:3-17.
[176] R. at 605:3-17.
[177] R. at 565:9-13.
[178] R. at 564:18-22.
[179] R. at 564:23-25.
[180] R. at 565:14-19.
[181] R. at 606:5-10.
[182] R. at 565:9-13.
[183] R. at 606:5-10.

Mr. St. Cyre while at the Probation and Parole Office.[184] If Mr. St. Cyre was *Mirandized* upon his arrest and taken to jail right away, the only admissible statements by Mr. St. Cyre would be those statements that Mr. St. Cyre made in jail. The State produced no evidence of any statements made by Mr. St. Cyre while in jail.

Even if Mr. St. Cyre was properly advised of his rights at some point during his confession, the State was unable to prove which portions of Mr. St. Cyre's confession occurred before being advised of his rights and which portions occurred after. As stated, Agent Everly acknowledged that he began questioning Mr. St. Cyre without reading him his rights.[185] Another agent had to remind Agent Everly to read Mr. St. Cyre his rights after Agent Everly had already started questioning Mr. St. Cyre.[186]

Because of the conflicting testimony about when and if Mr. St. Cyre was *Mirandized* before answering questions, and documentary evidence showing that the advice of rights only occurred *after* Mr. St. Cyre gave a statement, the State did not show beyond a reasonable doubt that the parts of the confession introduced into evidence were statements made after a valid *Miranda* warning.

The trial court's error in denying Mr. St. Cyre's motion to suppress was not harmless. Mr. St. Cyre allegedly told Agent Everly that Ms. Vaughn had given him a gun.[187] No other witness testified to this fact at trial. The only other evidence on this issue was that Mr. St. Cyre discovered that there was a gun in the vehicle shortly before returning to his meeting with Agent Everly, which

---

[184] R. at 605:3-10.
[185] R. at 221:14-21.
[186] R. at 221:14-21. This agent was not called to testify.
[187] R. at 566:6-8.

was too late for Mr. St. Cyre to remedy the situation.[188]  Although Mrs. St. Cyre informed Mr. St. Cyre that there was a gun in the vehicle, Mr. St. Cyre never observed or handled the weapon.[189] In fact, Mr. St. Cyre could not have accessed the gun from the passenger seat of the vehicle.[190] Introduction of Mr. St. Cyre's confession—before which he was not properly advised of his rights—prejudiced Mr. St. Cyre.

Respectfully, this Honorable Court should grant Mr. St. Cyre's habeas application, vacate his sentence, and remand the matter to the state court with directions to either free Mr. St. Cyre or retry him.

**D.** **CLAIM 3:     Ronald St. Cyre Received Ineffective Assistance of Counsel Throughout His Criminal Proceeding, including his sentencing, in violation of his Sixth and Fourteenth Amendment Rights.**

As described herein, Attorney Richard Tonry failed to provide effective assistance of counsel to Ronald St. Cyre throughout his trial and his sentencing proceeding.  In addition, the state court's assessment of Mr. St. Cyre's ineffective assistance of counsel claim was contrary to the clearly established law under *Strickland*'s jurisprudence. Consideration of the totality of such evidence is what the trial court should have done when it considered Mr. St. Cyre's ineffective assistance of counsel claim when determining prejudice. The trial court's failure to do so resulted in a misapplication of clearly established federal law. As well, the state court's ruling was an "an unreasonable application" of clearly established federal law because "the state court correctly identifie[d] the governing legal principle . . . but unreasonably applie[d] it to the facts" of Mr. St. Cyre's ineffective assistance of counsel claim.

*1.     Relevant Law – Ineffective Assistance of Counsel*

---

[188] R. at 620:11-16.
[189] R. at 620-627.
[190] R. at 627:16-22.

Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington,* 466 U.S. 668 (1984), a reviewing court must reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. The "benchmark" of the right to counsel is the "fairness of the adversary proceeding."[191]

### i.    Failure to Object to Improper Use of Evidence at Trial

Trial counsel has a duty to object to the use of impermissible evidence.[192] Particularly, trial counsel has a duty to object to the introduction of impermissible character evidence. *See State v. Johnson*, 389 So. 2d 372, 376-77 (La. 1980). In Louisiana, rebuttable character evidence must still be admissible under *State v. Johnson*, 389 So. 2d 372, 376-77 (La. 1980). *Johnson* holds that before allowing cross-examination of a character witness for the accused, a trial court was required to determine that the proposed evidence satisfied the following:

---

[191] *Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."); *see also Williams v. Taylor*, 529 U.S. 362, 391 (2000) (recognizing that while the *Strickland* "reasonable probability" test can resolve "virtually all" claims of ineffective assistance of counsel, "there are situations in which the overriding focus on fundamental fairness may affect the analysis."

[192] *See Kimmelman v. Morrison*, 477 U.S. 365, 385–87, 106 S. Ct. 2574, 2588–90, 91 L. Ed. 2d 305, 326–27 (1986) (finding ineffective assistance when counsel failed to move to suppress evidence because of counsel's failure to investigate); *Tomlin v. Myers*, 30 F.3d 1235, 1237–39 (9th Cir. 1994) (finding counsel ineffective for failure to move to suppress lineup identification evidence); *People v. Wallace*, 187 A.D.2d 998, 998–99, 591 N.Y.S.2d 129, 130 (4th Dept. 1992) (finding attorney's failure to object to admission of evidence was ineffective assistance); *People v. Riley*, 101 A.D.2d 710, 711, 475 N.Y.S.2d 691, 692–93 (4th Dept. 1984) (finding failure to object to inadmissible hearsay evidence, and lack of preparation and the pursuit of a highly prejudicial cross-examination constituted ineffective assistance).

1. that there is no question as to the fact of the subject matter of the rumor, that is of the previous arrest, conviction, or other pertinent misconduct of the defendant;

2. that a reasonable likelihood exists that the previous arrest, conviction, or other misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense at trial;

3. the neither the event or conduct nor the rumor concerning it occurred at a time too remote from the present offense;

4. that the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and

5. that the examination will be conducted in the proper form, that is: "Have you heard," etc., not "Do you know," etc.

*State v. Johnson*, 389 So.2d 372, 376-77 (La.1980) (adopting the above safeguards).

### ii.     Prejudice

In order to show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[193]

### 2.     *Richard Tonry's Failure to Object to the Admission of Improper Evidence*

When the State indicated that it intended to cross-examine Chelsea St. Cyre about prior marijuana use and about "about the two guns that Mr. St. Cyre possessed at the time that he was

---

[193] *Strickland*, 466 U.S. at 694.

shot in November," Mr. Tonry should have explicitly argued that this type of testimony was inadmissible under *Johnson*.

The defense argued that the only evidence brought up in Mrs. St. Cyre's direct examination was Mr. St. Cyre's work history since 2012. Defense counsel argued that Mrs. St. Cyre testified as to the facts and did not offer opinion evidence. He stated that Article 405 concerns testimony about reputation—not factual testimony.. The defense also asserted that the State waived their objections by failing to object to the testimony of Mrs. St. Cyre as it was elicited.

However, trial counsel failed to argue the *Johnson* factors, and that the testimony the State sought did not meet three of the five *Johnson* factors.[194] First, Mr. Tonry failed to argue that the court should consider whether there was a reasonable likelihood of generalized knowledge of Mr. St. Cyre's previous misconduct within his community. Mr. Tonry also failed to argue that the court should consider whether the State's proposed line of cross-examination "concerned the specific trait involved" in possession of a firearm by a convicted felon. Furthermore, the trial court did not determine that the examination would be in proper form.

The State's last two questions of Mrs. St. Cyre were not in proper form being much more analogous to the incorrect "do you know," which assumes that the question is submitting a true statement to the witness.[195] None of these questions involved a specific trait involved in the charged offense of possession of a firearm by a convicted felon. Moreover, there is no indication that these questions could be used to rebut general reputation evidence when there was no inquiry

---

[194] By limiting the period of time about which the State could ask questions and refusing to permit the State to ask questions about instances for which there was a lack of admissible evidence, the trial court considered two of the five factors.
[195] *See* R. at 654:30-655:31 (both questions begin with "are you aware"); *See also* at 377.

made about whether the questions were based on information widely known throughout the community.

Mr. Tonry's failure to argue the proper standard to the trial court prejudiced Mr. St. Cyre in multiple ways.  First, it led to the trial court's making an erroneous ruling that allowed the State to question Mrs. St. Cyre about matters prejudicial to Mr. St. Cyre. In fact, this same had been previously ruled to be inadmissible because of its prejudicial effect.[196] The jury therefore heard this impermissible testimony, which the State also referenced during its closing argument, prejudicing Mr. St. Cyre further. Specifically, the State asked Mrs. St. Cyre the following questions:

1.  Mrs. St. Cyre, have you heard that on the date of the incident for which we're in court today, on that date, your husband, Mr. St. Cyre, admitted to marijuana use?

2.  Have you heard that prior to this incident your husband was involved in a shooting in November of '17?

3.  And when those individuals opened fire on your husband, he was actually holding your infant daughter?

4.  And what when that happened, he dropped your daughter and retrieved a firearm from his own vehicle?

5.  And have you heard that your husband actually returned fire?

6.  Have you heard that marijuana was located in his residence?

7.  Are you aware that Mr. St. Cyre told his probation officer that the firearm that was located in the vehicle on the date of this incident for which we're here for trial, he told his parole officer that it was his aunt's and she gave it to him for protection?

8.  I asked, are you aware that your husband made the statement that she did give it to him for protection?

---

[196] *See* R. at 276:3-19.

Consequently, the jurors heard about Mr. St. Cyre's past marijuana use, past involvement in a shooting, and past possession of a firearm. The jury would have heard none of this evidence had it not been for Mr. Tonry's failure. Then because Mr. Tonry failed to properly object to the trial court's failure to consider *Johnson*, the appellate court failed to consider this error on appeal.[197]

Mr. Tonry's failure to raise this objection can not be viewed as strategic, and it prejudiced Mr. St. Cyre in a manner that changed the outcome of this case. Mr. St. Cyre contends that this Honorable Court has sufficient documentation to grant this claim for habeas relief.

**E.    CLAIM 4:    Ronald St. Cyre Was Denied Effective Assistance of Counsel in Violation of His Fifth, Sixth, Eighth and Fourteenth Amendment Rights and Equivalent Provisions of the Louisiana Constitution at his Sentencing and Habitual Offender Hearing.**

*1.    Relevant Law – Ineffective Assistance of Counsel*

The Sixth Amendment right to effective assistance of counsel includes the right to effective assistance of counsel on appeal.[198] Prejudice is presumed when an accused is denied effective representation of counsel at a critical stage of a criminal proceeding.[199] As discussed herein, the last reasoned state court decision concerning this claim was both "contrary to clearly established federal law,"[200] as well as based on an "unreasonable determination of the facts in light of the

---

[197] *See State v. St. Cyre*, 2019-0034 (La.App. 1 Cir. 12/19/19), 292 So. 3d 88, 110 (holding "while the defendant clearly objected to other crimes or bad acts being allowed into evidence, it made no objections regarding any of the three guidelines that he now asserts on appeal were not considered by the trial court. The *Johnson* Court noted that a defendant may not avail himself of these safeguards if he failed to make a contemporaneous objection on these grounds at trial." (citations omitted)).

[198] *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)).

[199] *Id.* (citations omitted).

[200] 28 U.S.C. § 2254(d)(1).

evidence presented."[201] As well, the state court "unreasonably applied" the facts presented by Mr. Cyre in his appeal when it determined his appellate counsel was constitutionally ineffective.[202]

The United States and Louisiana Constitutions afford criminal defendants the right to the effective assistance of counsel at sentencing.[203] Therefore, Mr. St. Cyre is entitled to be re-sentenced if he can show that: (1) the performance of his sentencing counsel fell below the objective standard of reasonableness, and (2) the deficiency of sentencing counsel's performance prejudiced the defendant.[204]

The objective standard of reasonableness is measured against prevailing professional norms; counsel's acts or omissions must be unreasonable under the circumstances.[205]  Counsel's deficient performance prejudices the defendant if the errors "deprive the defendant of a fair trial."[206] .

To carry this burden, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Finally, the court must contemplate "whether the result of the proceedings was fundamentally unfair and unreliable."[207]  The United States Supreme Court has recognized that criminal defendants are entitled to expect that their counsel understands applicable constitutional law.[208]

---

[201] *Id.* § 2254(d)(2).
[202] *Williams v. Taylor*, 529 U.S. 362, 406 (2000)
[203] *See* U.S. Const. amend. VI; *also* La. Const. art. 1, § 13.
[204] *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *also State v. Washington,* 491 So.2d 1337, 1339 (La. 1986).
[205] *Id.* at 690
[206] *Strickland,* 466 U.S. at 692
[207] *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993).
[208] *See, e.g.*, *Connick v. Thompson*, __ U.S. __, 131 S.Ct. 1350, 1362–63, 179 L.Ed.2d 417 (2011).
; *also State v. Thomas*, 2012-1410 (La. 09/04/13), 124 So. 3d 1049, 1054.

It follows that failure to pursue meritorious claims and defenses, owing not to strategic considerations but to a misapprehension of controlling law or relevant facts generally, will be found deficient.[209]

With regards to sentencing hearings, the Louisiana Supreme Court recently affirmed *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 and determined that "sentencing is a critical stage of the proceeding, at which point there is a right to the effective assistance of counsel, and direct review is ill suited to address such a constitutional violation because it will often require further evidentiary development."[210]

Specifically the *Harris* Court determined that:

an objectively reasonable standard of performance requires that counsel be aware of the sentencing options in the case and ensure that all reasonably available mitigating information and legal arguments are presented to the court. Since Louisiana law prohibits excessive sentences, and requires that individual circumstances be considered, counsel acts unprofessionally when he fails to conduct a reasonable investigation into factors which may warrant a downward departure from the mandatory minimum. *See generally Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (holding that decision of counsel not to expand their investigation into petitioner's life history for mitigating evidence beyond PSI and department of social services records fell short of prevailing professional standards, and inadequate investigation prejudiced petitioner).

**Counsel's failure to object to the sentence or file a motion to reconsider at the habitual offender proceedings deprived defendant of an important judicial determination by the trial court**, and also failed to correct any inaccurate assumptions concerning the law and the court's capacity to deviate downward if warranted. **This failure also deprived the appellate court of an opportunity to review the district court's decisions (or errors of law), as well as deprived it of the opportunity to review any evidence in support of defendant's excessiveness claim that he could have put into the record before the trial court.**[211]

---

[209] *See, e.g.*, *Kimmelman v. Morrison*, 477 U.S. 365, 385, 106 S. Ct. 2574, 91 L.Ed.2d 305 (1986); *Nero v. Blackburn*, 597 F.2d 991, 993–94 (5th Cir. 1979).

[210] *State v. Harris*, 2018-1012, p. 22 (La. 07/09/20), 2020 WL 3867207

.

[211] *Harris*, 2020 WL 3867207 *25–27 (emphasis added).

Mr. Winston failed to effectively represent Mr. St. Cyre on his appeal because he failed to raise an assignment of error that his habitual offender hearing was legally defective.  This failure was due to counsel's admitted error that he failed to research this issue.[212]  By failing to raise this legal error in appeal, Mr. St. Cyre was prejudiced in that the appellate court was deprived from reviewing a claim that likely would have prevailed.

In light of the foregoing law and argument, Mr. St. Cyre is entitled to have his appellate rights reinstated because his appellate attorney rendered ineffective assistance of counsel.

 2. *Relevant Law – Constitutionally Excessive Sentences*

The Eighth Amendment of the United States Constitution prohibits "cruel and unusual" punishments and sentences that are grossly disproportionate to the severity of the crime for which it is imposed.[213]

To rebut the presumption of constitutionality, the defendant must show via a motion for reconsideration that: "[he] is exceptional, which [] means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances." *Id*.

 3. *Mr. St. Cyre received ineffective assistance of counsel at his sentencing hearing.*

 **i. Mr. Tonry's Failures**

Mr. St. Cyre's sentencing attorney rendered ineffective assistance of counsel during the entirety of his sentencing proceedings because he failed to investigate and present mitigation evidence at either his sentencing or habitual offender hearings, and also failed to move to have his

---

[212] *See* PCR, Ex. D at ¶ 18.
[213] *Solem v. Helm*, 463 U.S. 277, 289-90 (1983).

sentence reconsidered. As a result of these failures, Mr. St. Cyre was deprived of the opportunity to (1) present evidence in support of his excessive sentence claim; and (2) have his excessive sentence claim with the mitigation evidence concerning his non-violent criminal history, social history and traumatic childhood reviewed by the appellate court.

The sentencing and habitual offender hearing transcripts are clear: Mr. Tonry did not introduce any evidence about Mr. St. Cyre, his social history, his extremely traumatic childhood, his employment history, or his non-violent criminal history to the sentencing judge.[214]

In fact, Mr. Tonry called no witnesses, presented no expert testimony, and failed to present any evidence as to why the sentencing judge should provide a sentence on the lower end of the sentencing range in this case.

Furthermore, Mr. Tonry failed to file a motion for reconsideration.

Mr. Tonry's failures are objectively unreasonable, as they left Mr. St. Cyre not only with no record evidence for the appellate court to review the merits of excessive sentence claim; but without the legal basis to even bring such a claim.

### ii.    Mr. St. Cyre was prejudiced by sentencing counsel's failures

As contemplated by *Strickland*, *Harris*, and *Eugene*, Mr. Tonry's failures prejudiced Mr. St. Cyre. Had Mr. Tonry properly presented mitigation evidence at his sentencing hearings, as well as moved for sentence reconsideration with mitigation evidence, the sentencing judge would have grounds to tailor a constitutionally appropriate sentence and depart from the thirty-year sentence in this case.

---

[214] *See generally* PCR, Ex. C, R. at 720-35.

It is abundantly clear that Mr. St. Cyre is serving a thirty-year sentence without access to any diminution of sentence for good-time or parole for a non-violent crime.  It is further abundantly clear that Mr. St. Cyre's criminal history includes no crimes of violence or sexual offense.

The mitigation evidence presented in this pleading demonstrates that Mr. St. Cyre was exposed to unfathomable tragedy and violence throughout his childhood.  While Mr. St. Cyre's past does not excuse his behavior, it certainly explains many of his decisions.  These factors greatly diminish Mr. St. Cyre's culpability in this case and should be accounted for when determining whether a thirty-year sentence is constitutional.

The underlying facts and context of this matter demonstrate that Mr. St. Cyre is far from the worst of the worst who have committed this crime.  Had Mr. Tonry properly investigated this case, and presented the Court with appropriate mitigation evidence, it is more likely than not that the sentencing judge would have rejected a thirty-year plea offer for a non-violence offense. Furthermore, Mr. St. Cyre received ineffective assistance of counsel because his sentencing counsel failed to file a Motion to Reconsider Sentence, which deprived him of the opportunity of any appellate review of his sentence. This was in violation of Mr. St. Cyre's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States' Constitution as well as the equivalent provisions of the Louisiana Constitution.

None of the significant mitigation evidence found by way of Genevieve Hampson's report was presented to Mr. St. Cyre's sentencing judge at either a hearing, or via a motion for reconsideration.

*Strickland* counsels that the court must "consider all the circumstances" when weighing an ineffective assistance claim. Considering the facts here, the failures of Mr. St. Cyre's sentencing counsel prevented him from being able to contest the excessive nature of his sentence.

The law clearly states that in order to succeed on a excessive sentence claim the Defendant must show that "[he] is exceptional, which [] means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances."[215]

Genevieve Hampson's report demonstrates that in fact, Mr. St. Cyre is the exception that requires a finding that his sentence is constitutionally excessive. Despite the nature of the crime in this case, Mr. St. Cyre's strong family ties, consistent work history, and traumatic childhood are the "unusual circumstances" that necessitate a sentence meaningfully tailored to his unique circumstances.

As explained above, had Mr. Tonry properly investigated this case and presented the foregoing mitigation evidence, it is more likely than not that the trial court and/or appellate court would have determined that Mr. St. Cyre's sentence is in fact unconstitutionally excessive. Therefore, the prejudice experienced by Mr. St. Cyre due to his sentencing attorney's objectively unreasonable conduct cannot be denied.

Considering the foregoing, Mr. St. Cyre is entitled to have his sentence vacated, and remanded to the state trial court for a new sentencing hearing because his sentencing attorney rendered ineffective assistance of counsel.

**F.     CLAIM 5:     Mr. St. Cyre's Right to Due Process Under the United States Constitution was Violated Because His Habitual Offender Plea Was Taken in Violation of Louisiana Law.**

In Louisiana, La. R.S. § 15:529.1(D) requires that the

> The court in which the subsequent conviction was had shall cause the person,
> whether confined in prison or otherwise, to be brought before it and shall inform him
> of the allegation contained in the information and of his right to be tried as to the

---

[215] *State v. Royal*, 03-439, p. 11 (La. App. 5 Cir. 9/30/03), 857 So. 2d 1167, 1174, *writ denied,* 03-3172 (La. 3/19/04), 869 So.2d 849.

truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and the judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, as set forth in the information. If the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section.

In *State v. Martin,* 427 So. 2d 1182, 1184-85 (La. 1983), the court interpreted La. R.S. § 15:529.1(D) to require that a defendant be advised of the right to a formal hearing and to have the State prove its case. Additionally, this section implicitly requires that the defendant be advised of his right to remain silent.[216]

In *State v. Noel*, the Louisiana Fourth Circuit has explained:

> The trial court must inform the defendant of these rights *prior* to the defendant's plea on the multiple bill and *before* the defendant admits that he is the same person as charged in the multiple bill. If a defendant pleads guilty or admits that he is the same person charged in the  multiple bill before the trial court informs him of the rights set forth in the R.S. 15:529.1(D), the defendant's conviction and sentence as a multiple offender must be vacated.[217]

The Constitutional right to due process of law requires, at a minimum, that Mr. St. Cyre's habitual offender proceeding be conducted in compliance with the laws of the State of Louisiana. Indeed, for over a century, the Louisiana and U.S. Supreme Courts have recognized the unremarkable principle that "[d]ue process of law is *process according to the law of the land.*"[218] Although the Fourteenth Amendment affords each State considerable latitude in determining its

---

[216] *See State v. Johnson,* 432 So. 2d 815, 817 (La. 1983).
[217] 585 So. 2d. 652. 645-55; *also State v. White*, 517 So. 2d 461, 464 (La. App. 1st Cir. 1987) (finding that a multiple offender adjudication must be set aside and remanded when not explicitly informed of his right to remain silent prior to stipulating to a finding in a multiple offender proceeding.).
[218] *State v. Harvey*, 159 La. 674, 680 (1925) (emphasis added) (citing *Hurtado v. California*, 110 U.S. 516 (1884)).

own procedures and substantive rules, the Due Process Clause nevertheless requires that criminal prosecutions be "conducted according to the settled course of judicial proceedings as established by the law of the State."[219]

In this case, the record is clear that the trial court judge failed to inform Mr. St. Cyre of his statutory right to remain silent, his right to a hearing, and his right that the State must prove its allegation that he is a habitual offender prior to accepting a stipulation from Mr. St. Cyre that he was a habitual offender.[220] Mr. St. Cyre's attorney did not object or request that the Court explain Mr. St. Cyre's statutory rights prior to his stipulation.[221]

The trial court's failure to properly enforce La. R.S. 15:529.1(D) during Mr. St. Cyre's habitual offender hearing violated his federal and state constitutional right to due process.

In turn, this Honorable Court should grant Mr. St. Cyre's habeas application on this claim, and set aside his habitual offender sentence.

As discussed herein, the last reasoned state court decision concerning this claim was both "contrary to clearly established federal law,"[222] as well as based on an "unreasonable determination of the facts in light of the evidence presented."[223] As well, the state court "unreasonably applied" the facts presented by Mr. Cyre in his appeal when it determined his due process rights were not violated.[224] The United States Supreme Court has made clear that "the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles

---

[219] *Frank v. Mangum*, 237 U.S. 309, 326 (1915).
[220] *Id*. at 733.
[221] *Id*.
[222] 28 U.S.C. § 2254(d)(1).
[223] *Id.* § 2254(d)(2).
[224] *Williams v. Taylor*, 529 U.S. 362, 406 (2000)

the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged."[225]

In addition, the Louisiana Supreme Court has stated that

accused's right under the Due Process Clause to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . . The presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.[226]

Furthermore, the United States Supreme Court has explained that any

ex *parte* meeting or communication between the judge and [] a deliberating jury is pregnant with possibilities for error . . . even an experienced trial judge cannot be certain to avoid all the pitfalls inherent in such an enterprise . . . Counsel were thus denied any opportunity to clear up the confusion regarding the judge's direction [in the ex parte communication] . . . which could readily have been accomplished by requesting that the whole jury be called into the courtroom.[227]

In this case, two jurors have provided evidence that Mr. St. Cyre's trial court judge had an ex parte communication with the jury in the break room.  *See* Ex. H.  In fact, one juror, Ms. Bodden, even explained that the trial court judge not only came into the break room, but provided additional instructions to the jurors that they were supposed to find Mr. St. Cyre guilty or not guilty.  *Id.*

For this kind of ex parte communication to happen outside of the presence of defense counsel and Mr. St. Cyre is exactly the type of scenario that the *Gypsum* court warned was problematic.  This type of ex parte communication is "pregnant with possibilities for error" and defense counsel was denied the opportunity to correct any confusion imparted by the judge.  *See Gypsum*, 438 U.S. 60-1.

---

[225] *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 81 (1919).
[226] *State v. Hampton*, 98-2605 (La. 05/28/99), 737 So. 2d 699, 700 (quotations omitted).
[227] *United States v. United States Gypsum Co.*, 438 U.S. 422, 460-61.

Considering the evidence before this Honorable Court, Mr. St. Cyre contends that he is entitled to have his conviction vacated because the trial judge's ex parte communication was improper.

### G. CLAIM 6: Mr. St. Cyre dud not have a constitutionally fair trial due to cumulative error.

"Cumulative error" justifies reversal only when errors "so fatally infect the trial that they violated the trial's fundamental fairness."[228] The application of a cumulative error claim is especially uncommon when the State presents substantial evidence of guilt.[229]   As discussed herein, the last reasoned state court decision concerning this claim was both "contrary to clearly established federal law,"[230] and also based on an "unreasonable determination of the facts in light of the evidence presented."[231] As well, the state court "unreasonably applied" the facts presented by Mr. Cyre in his appeal when it determined his cumulative error mandates that Mr. St. Cure's conviction get vacated.[232]

In this case, considering all of the evidence presented in this PCR, as well as his legal claims raised during his appeal, it is abundantly clear that Mr. St. Cyre's trial and sentencing proceeding was riddled with constitutional error. **If there is a case where cumulative error requires a conviction's reversal, this is the one.**

### CONCLUSION

---

[228] *United States v. Fields*, 483 F.3d 313, 362 (5th Cir. 2007).
[229] *See United States v. Neal*, 27 F.3d, 1035 1052 (5th Cir. 1994).
[230] 28 U.S.C. § 2254(d)(1).
[231] *Id.* § 2254(d)(2).
[232] *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

When collectively viewed, the procedural and substantive errors in Ronald St. Cyre's case cannot be harmless since their combination deprived him of his fundamental fair trial rights guaranteed under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

Therefore, considering the foregoing, Petitioner Ronald St. Cyre hereby requests and prays for the following relief:

1. A new trial;

2. A new sentencing hearing;

3. An evidentiary hearing;

4. A reasonable opportunity to supplement the petition following a decision by the Louisiana Supreme Court;

5. Further discovery; and

6. Any other relief requested herein or to which he is equitably or legally entitled.

Respectfully Submitted,

/s/ *Emily H. Posner*
La. Bar No. 35284
6221 South Claiborne Avenue
Suite 556
New Orleans, Louisiana 70125
(504) 233-4237
ep@emilyposnerlaw.com

*Counsel for Ronald St. Cyre*

**VERIFICATION**

I hereby verify that the facts set forth in this petition are true and accurate to the best of my information and belief.

/x/ *Emily H. Posner*
Emily H. Posner

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served via email on Matthew Caplan, the Assistant District Attorney assigned to this matter in the St. Tammany Parish District Attorney's Office.

/s/ *Emily H. Posner*
Emily H. Posner