UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RONALD ST. CYRE,           PETITIONER | *  *  * | CIVIL ACTION |
| VERSUS | *  * | NO. 24-cv-1281 |
| MARCUS MYERS, WARDEN,           RESPONDENT | *  *  * | SECTION "P" (3) |

**SUPPLEMENTAL RESPONSE TO
PETITION FOR *HABEAS CORPUS* RELIEF**

MAY IT PLEASE THE COURT:

Ronald St. Cyre has applied for habeas corpus relief (Rec. Doc. 11). Pursuant to the Court's order (Rec. Doc. 12), the respondent produced the state court record (Rec. Doc. 16) and filed an answer asserting that the petition is untimely (Rec. Doc. 17). The Court has noted errors in the respondent's timeliness calculation and ordered a response to the merits of the petitioner's claims (Rec. Doc. 21). This supplemental response now follows.

**TABLE OF CONTENTS**

PRELIMINARY MATTERS..................................................................................................3

OVERVIEW OF THE PETITIONER'S CLAIMS.................................................................3

TIMELINESS..........................................................................................................................4

EXHAUSTION........................................................................................................................4

MERITS REVIEW...................................................................................................................5

    1.    The claim concerning the denial of the motion to suppress evidence (Claim 1)...............................................................................................5

    2.    The claim concerning the denial of the motion to suppress statements (Claim 2)..............................................................................................6

    3.    The claim of ineffective assistance of counsel at trial (Claim 3)............8

    4.    The claim of improper ex parte communications during deliberations (Claim 5-B) ......................................................................................9

    5.    The claim concerning Louisiana's Habitual Offender Law and the related claim of of ineffective assistance of counsel on appeal (Claim 4-A; Claim 5-A)...........................................................13

    6.    The claim of ineffective assistance of counsel at sentencing (Claim 4-B)....................................................................................................14

    7.    The claim that cumulative error review warrants relief (Claim 6)......16

CONCLUSION AND PRAYER............................................................................................16

CERTIFICATE OF SERVICE...............................................................................................17

PRELIMINARY MATTERS

The respondent does not dispute that the petitioner is in custody. The state court record has previously been submitted. Rec. Doc. 16. The respondent has previously summarized the procedural history of the case. Rec. Doc. 17, pp. 4-5.

As is pertinent here, the petitioner was convicted following trial by jury. The district attorney filed a habitual offender bill of information alleging the petitioner to be a fourth or subsequent felony offender (SCR, Vol. 1, pg. 191). The petitioner was arraigned on the habitual offender bill of information, denied the allegations, and requested a hearing (SCR, Vol. 1, pg. 37; SCR, Vol. 3, pp. 261-267). On the date for which the hearing was scheduled, the court accepted a negotiated resolution whereby the petitioner agreed to be adjudicated a second felony offender in exchange for a thirty year sentence (SCR, Vol. 1, pp. 39-40; SCR, Vol.3, pp. 268-274).

OVERVIEW OF THE PETITIONER'S CLAIMS

The petitioner has listed six claims. The respondent submits that the petitioner has actually presented eight claims, as two distinct claims are raised within his "Claim 4" and two distinct claims are raised within his "Claim 5."

Within Claim 4, the petitioner raises two separate claims of ineffective assistance of counsel concerning two different attorneys at two different stages of the proceedings. He claims that his appellate attorney, Mr. Winston, "failed to effectively represent Mr. St. Cyre on his appeal because he failed to raise an assignment of error that his habitual offender hearing was legally defective." Rec. Doc. 11, pg. 42. He also claims that his trial counsel, Mr. Tonry, "failed to investigate and to present mitigation

evidence" and "failed to move to have his sentence reconsidered." *Id.*, pp. 42-43. The respondent will refer to the claim involving Mr. Winston as "Claim 4-A" and the claim involving Mr. Tonry as "Claim 4-B."

Within Claim 5, the petitioner claims both that the procedures required by Louisiana's Habitual Offender Law were not followed (Rec. Doc. 11, pg. 45-47) and that the trial court judge had improper ex parte communications with the jurors during deliberations (Rec. Doc. 11, pp. 47-49). The respondent will refer to the claim about the Habitual Offender Law claim as "Claim 5-A" and the one about ex parte communications with the jury as "Claim 5-B."

The respondent will otherwise identify the petitioner's claims by the numbers assigned to them by the petitioner.

## TIMELINESS

The respondent no longer contends that St. Cyre's habeas corpus petition is time-barred. *See* Rec. Doc. 21, pg. 3 (noting that the respondent's previous calculations failed to account for the order of the United States Supreme Court extending filing deadlines due to the COVID-19 pandemic).

## EXHAUSTION

The respondent does not allege that the petitioner's claims are unexhausted.[1]

---

1  The respondent recognizes that it could make an argument that the claims first raised in the application for post-conviction relief were not properly exhausted. But an analogous argument has previously been rejected by a different division of this Court. *Compare* SCR, Vol. 7, pp. 17-19 & SCR, Vol. 8, pp. 16-18 *with Smith v. Cooper*, 2013 WL 4548565, at *9 & nn. 14-16. The respondent therefore elects not to advance that argument.

MERITS REVIEW

St. Cyre's claims were adjudicated on the merits. They are for that reason subject to AEDPA deference. 28 U.S.C. § 2254(d); see also, e.g., Langley v. Prince, 926 F.3d 145, 155-156 (5th Cir. 2019) (en banc). The respondent knows that the Court is familiar with AEDPA's standards, so it does not recite them here.

1. **The claim concerning the denial of the motion to suppress evidence (Claim 1).**

The petitioner's first claim is that "the trial court erred in denying Mr. St. Cyre's motion to suppress evidence because there was no reasonable suspicion to conduct a search and the vehicle belonged to a third party." Rec. Doc. 11, pg. 23. This is a Fourth Amendment claim.

In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Id. at 494. See generally Janecka v. Cockrell, 301 F.3d 316, 320-322 (5th Cir. 2002).

Here, the State provided the petitioner an opportunity for full and fair litigation of his Fourth Amendment claim, and the record shows that the petitioner availed himself of this opportunity by litigating a motion to suppress evidence and by urging the denial of the motion to suppress as an assignment of error during direct review proceedings. See SCR, Vol. 2, pp. 2-63 (motion hearing transcript); SCR, Vol. 4, pp. 47-54 (appellate brief, urging assignment of error that "[t]he trial court erred in denying

Mr. St. Cyre's motion to suppress evidence"); SCR, Vol. 5, pp. 15-21 (re-urging that assignment of error in writ application filed with Louisiana Supreme Court).

Because the State provided the petitioner an opportunity for full and fair litigation of his Fourth Amendment claim, Stone v. Powell bars relief.

### 2. The claim concerning the denial of the motion to suppress statements (Claim 2).

The petitioner's second claim is that "the trial court erred in denying Mr. St. Cyre's motion to suppress his statement to Agent Everly because Mr. St. Cyre was not properly *Mirandized* before his custodial interrogation with Agent Everly." Rec. Doc. 11, pp. 30-34.

This claim, unlike a Fourth Amendment claim, may be considered in an application for habeas corpus relief. *See Withrow v. Williams*, 507 U.S. 680 (1993).

To be entitled to relief, the petitioner must show that "the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

The last reasoned state court decision to address this claim was the opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. St. Cyre*, 19-0034 (La. App. 1 Cir. 12/19/19), 292 So.3d 88, 101-105. The question on appeal was

more one of fact than one of law—"The defendant argues that Agent Everly 'started questioning' him before advising him of his *Miranda* rights" and that "even if he was properly advised of his rights at some point during his inculpatory statement, the State did not prove which portions of his inculpatory statement occurred before being advised of his rights and which portions occurred after being advised of his rights." 292 So.3d at 102. The Court then reviewed the testimony adduced at the motion hearing and the trial and, after reviewing this testimony, it concluded:

> Agent Everly testified that he Mirandized the defendant, then got his statement, and then arrested him. Whether all this happened around 2:00 p.m. or in quick succession is of no moment. This was a credibility issue, and the trial court chose to believe the testimony of Agent Everly. Further, Supervisor [Lindy] Lousteau also testified she heard Agent Everly Mirandize the defendant, then question him about the gun.
>
> Based on the foregoing, we find no error in the trial court's conclusion that the defendant was Mirandized before making the inculpatory statement.

*St. Cyre*, 292 So.3d at 105.

Here, the state courts recited and applied the law correctly, particularly, it identified and enforced the requirement that a suspect in custody be advised of his rights prior to the commencement of custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966).

The petitioner's argument is that the state courts erroneously evaluated the credibility of Agent Everly. *See* Rec. Doc. 11, pg. 30 ("Agent Everly's testimony is not credible"); *id.* at pg. 31 ("The State was unable to produce any evidence beyond Agent Everly's suspect testimony").

In habeas proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The petitioner has failed to rebut the presumption of the correctness of the state court's factual determination that he was advised of his rights prior to making an inculpatory statement. He is for that reason not entitled to habeas corpus relief.

### 3. The claim of ineffective assistance of counsel during the trial (Claim 3).

The petitioner's third claim is one of ineffective assistance of counsel. The petitioner describes the conduct at issue as "failure to object to the admission of improper evidence" (Rec. Doc. 11, pg. 36, italicized heading), but it is really that counsel failed to adequately argue an objection that actually was made. *See* Rec. Doc. 11, pg. 37 (noting the arguments that counsel did make in opposing the introduction of the evidence, and arguing that "counsel failed to argue the *Johnson* factors, and that the testimony the State sought did not meet three of the five *Johnson* factors").

The state district court's discussion of this claim spans four full pages. SCR, Vol. 6, pp. 1145-1149. The court found no deficient performance: it observed that trial counsel discussed the *Johnson* decision in its argument to the Court during trial (SCR, Vol. 6, pp. 1147, referencing SCR, Vol. 3, pg. 180, lines 10-11) and found that counsel's arguments to be "well thought out" and "adequately argued" (SCR, Vol. 6, pg. 1149). The court also found that petitioner failed to demonstrate

prejudice (SCR, Vol. 6, pg. 1149). The last reasoned decision is from the Louisiana Supreme Court, which held that the petitioner "fails to show lower court error." *State v. St. Cyre*, 23-1686 (La. 5/07/24), — So.3d —.

The respondent submits that the reasoning of the state courts self-evidently does not represent an unreasonable application of the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).

### 4. The allegation of improper ex parte communications during deliberations (Claim 5-B)

The petitioner claims that the trial court engaged in improper *ex parte* communications with the jury while the jury was deliberating. Rec. Doc. 11, pp. 47-49; see also SCR, Vol. 6, pp. 108-109.

The state district court addressed this claim as follows:

> In Claim V, Defendant makes the very serious claim that "the trial judge had ex-parte communications with the jury" in the jury deliberation room and that the judge instructed the jury outside of the presence of counsel. This Claim is based on an affidavit from [post-conviction counsel's] investigator, Neha Nimmagudda, regarding her conversations with two jurors, three years after the trial. It is understandable that the jurors might not have complete recollection of all of the events of a three day trial three years before speaking about it with [the] investigator. Nimmagudda was not on the jury and therefore not present in the jury room during deliberations, nor does she purport to having been present in the courtroom at any time during the trial. She therefore, had no personal knowledge of the events of the trial and her "affidavit" is not evidence of those events. The jurors themselves did not provide affidavits. Their "statements" are in the investigator's handwriting and presumably follow the chronology and version of the facts set out in her questioning.
>
> The court directs the reader's attention to the Minute Entry of

July 19, 2018 (Tr. 16-17)[2] and the transcript of that date beginning on page 695 where the court read the jury instructions.[3] A written copy of those instructions is a part of the record beginning on page 149.[4] Immediately after reading the eight legal sized pages of instructions and prior to the beginning of deliberations, the State brought to court's attention a discrepancy between the written instructions and the court's reading of those instructions (Tr. 708).[5] <u>Had the court instructed the jury in the jury room outside the presence of counsel, how would counsel know that the court had made a mistake?</u> The transcript reveals that a bench conference was then held <u>with all counsel</u> after which the court reread the instructions as written to the jury, with all counsel present, apologizing for a mis-statement. Then on page 709, "Now all right, to all 12 of the jurors first selected, are each of you able to go forward into the jury room, deliberate, and reach a verdict in this case?"[6]

Part of the jury instruction for the case at bar, and in fact, a standard instruction contained in *Louisiana Civil Law Treatise Volume 17, Criminal Jury Instructions and Procedure* §3:12, was read at Tr. Page 708: "If you have a question about the instructions I have given you, have the foreperson write it down and give it to the bailiff. Please be sure, in doing so not to reflect your vote or present thinking."[7] The jury paid heed to this part of the instructions and pages 157 and 158 of the record are copies of written questions posed by the jury, and the court's written responses.[8] The first question is "We would like to see multiple copies of the judge's instructions" to which the court responded "Louisiana law does not allow jury (sic) to have written instructions in the jury room." It makes no sense that if the judge was in the jury room giving instructions, that the jury would <u>write</u> a request when a verbalized request would have ended the inquiry.

---

2  SCR, Vol. 1, pp. 34-35.

3  SCR, Vol. 3, pg. 229.

4  SCR, Vol. 1, pp. 167-174

5  SCR, Vol. 3, pg. 243, lines 20-26.

6  SCR, Vol. 3, pp. 243-244.

7  SCR, Vol. 3, pg. 244, lines 19-23.

8  SCR, Vol. 1, pp. 175-176.

> In response to the written question at page 158 of the record, the court reread a portion of the instructions.[9] The court then goes on (Tr. 713) "Would you all be in a position to go forward and conclude your deliberations? We'll be in recess to await a verdict. (At this time, the jury was retired at 1:51 p.m.)"[10] Lastly, after the verdict was rendered and read (Tr. 715) "Folks, your job is complete. This last time we'll retire you, and if you have a moment, I'd love to visit with you before you're released for the week."[11] To be clear, the transcript is unequivocal that the court instructed all members of the jury including the alternate, in open court with the bailiff, clerk, court reporter and <u>all counsel</u> present. After all deliberations were complete, and the verdict of the jury read and the jury polled, the judge met with the jury alone without counsel present. It is quite possible that after the verdict was rendered some jurors still had questions and the court's responses may have been the source of the two jurors' statements relative to ex parte instructions.
>
> Perhaps counsel and her investigator have little actual trial experience in this jurisdiction and are not aware that, <u>after a verdict is rendered, most, if not all</u> of the judges in the Twenty-Second Judicial District will meet with jurors to thank them for their service and answer any remaining questions. Those conversat~ons typically take place without counsel present. **That is exactly what happened in the case at bar.**
>
> "Considering the evidence before this Honorable Court, Mr. St. Cyre contends he is entitled to have his conviction vacated because the trial judge's exparte communication was improper." (Supplement paragraph 128) Nimmagudda's affidavit is not "evidence" of what transpired in the jury room, nor are the "statements" in Nimmagudda,'s hand purportedly from two jurors. The "Honorable Court" counsel is asking to vacate Defendant's conviction based on her allegation of improper interaction of the court with the jury is the same court she has accused of that serious violation of Defendant's rights. A violation that did not occur. This claim has no merit.

SCR, Vol. 6, pp. 1143-1145 (underlining and bold typeface in original).

---

9   SCR, Vol. 1, pp. 176; SCR, Vol. 3, pp. 246-248.

10  SCR, Vol. 3, pg. 248, lines 8-12.

11  SCR, Vol. 3, pg. 250, lines 13-17.

The last reasoned decision is from the Louisiana Supreme Court, which held that the petitioner "fails to show lower court error." *State v. St. Cyre*, 23-1686 (La. 5/07/24), — So.3d —.

The clearly established federal law concerning external influences on jury deliberations is not in dispute. *See Oliver v. Quartermann*, 541 F.3d 329, 334-335 (5th Cir. 2008), discussing *Remmer v. United States*, 347 U.S. 227 (1954).

The question whether there *was* any such influence on the jury is in the first instance a question of fact.

Here, the state courts concluded that the petitioner failed to prove that any improper *ex parte* communication actually occurred.

In habeas proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The petitioner has failed to rebut the presumption of the correctness of the state court's factual determination that there no *ex parte* communications with jury during deliberations occurred.

### 5. The claim concerning Louisiana's Habitual Offender Law and the related claim of of ineffective assistance of counsel on appeal (Claim 4-A; Claim 5-A).

The petitioner advances two related claims concerning his adjudication as a habitual offender. He argues that his habitual offender plea was taken in violation of Louisiana law because "the trial court judge failed to inform Mr. St. Cyre of his statutory right to remain silent, his right to a hearing, and his right that the State must prove its allegation that he is a habitual offender" (Rec. Doc. 11, pp. 45-46). He also argues that his appellate counsel "failed to effectively represent [him] on appeal because he failed to raise an assignment of error that his habitual offender hearing was legally defective' (Rec. Doc. 11, pg. 41).

The state district court found that "the transcript of August 1, 2018 when the Habitual Offender Bill was first filed demonstrates that the court informed Defendant of all of his rights vis-a-vis that bill (Tr. 726-728)" and there was no merit to the related ineffective assistance of counsel claim because "a simple review of the record revealed that Defendant was informed of his rights." SCR, Vol. 6, pp. 1142-1143 (referencing SCR, Vol. 3, pp. 263-265).[12] This was a correct application of Louisiana law. *See State v. Gonsoulin*, 03-2473 (La. App. 1 Cir. 6/25/04), 886 So.2d 499, 502 (there is no requirement that the court "inform the defendant of his rights at each phase of the habitual offender proceeding;" accordingly, "the trial court did

---

12 The record shows that, after being advised of his right with respect to the habitual offender hearing, the petitioner requested a hearing and that hearing was scheduled for August 21, 2018. SCR, Vol. 1, pg. 37 (minute entry); SCR, Vol. 3, pg. 265 (transcript). The hearing was then continued from August 21, 2018 to September 21, 2018. SCR, Vol. 1, pg. 38 (minute entry). The petitioner admitted the allegations of an amended habitual offender bill of information on September 21, 2018. SCR, Vol. 1, pp. 39-40 (minute entry); SCR, Vol. 3, pp. 268-274 (transcript).

not err in not advising the defendant of his rights a second time before he entered his stipulation").

The last reasoned decision is from the Louisiana Supreme Court, which held that the petitioner "fails to show lower court error." *State v. St. Cyre*, 23-1686 (La. 5/07/24), — So.3d —.

The petitioner fails to show an  an unreasonable application of clearly established federal law and also fails to rebut the presumption of correctness that attaches to the state court's factual determination that the petitioner was in fact advised of his rights regarding the habitual offender bill of information.

### 6. The claim of ineffective assistance of sentencing counsel (Claim 4-B).

The petitioner argues that counsel "failed to investigate and present mitigation evidence" and "failed to move to have his sentence reconsidered," and as a result the petitioner "was deprived of the opportunity to (1) present evidence in support of his excessive sentence claim; and (2) have his excessive sentence claim with the mitigation evidence concerning his non-violent criminal history, social history and traumatic childhood reviewed by the appellate court." Rec. Doc. 11, pp. 42-43.

The state district court observed that the sentence was imposed pursuant to a negotiated plea agreement, and that had the prosecution proven the allegations contained in the habitual offender bill of information, the petitioner "faced the possibility of a life sentence without the possibility of probation, parole or suspension." SCR, Vol. 6, pp. 1149-1150. The state district court noted that, after the agreement had been reached, "had defendant offered the type of mitigating

evidence supplied in this Application [for Post-Conviction Relief] or urged a Motion to Reconsider [Sentence], the State would have been well within its rights to consider the contract breached and withdraw its generous second offender, thirty year agreement." SCR, Vol. 6, pg. 1151.[13]  Finally, the state district court noted that the agreement reached by the parties resulted in a sentence that "was in the mid-range for a second felony offender with a firearm and <u>very low range</u> for a fourth or greater felony offender." SCR, Vol. 6, pg. 1152 (emphasis in original). Based on this discussion, the state district court concluded that this claim had no merit. *Id.*.

The last reasoned decision is from the Louisiana Supreme Court, which held that the petitioner "fails to show lower court error." *State v. St. Cyre*, 23-1686 (La. 5/07/24), — So.3d —.

The state courts determined that limiting the petitioner's sentencing exposure was a reasonable course of action in light of the petitioner's history of felony convictions. The adjudication of this claim does not present an unreasonable application of the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).

---

13 This is a correct statement of Louisiana law. *See* La. C.Cr.P. art. 881.2(A)(2) ("The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea."); *State v. Shelton*, 09-2071 (La. 1/29/10), 26 So.3d 745, 746 (Article 881.2 "precludes a trial court from granting a motion to reconsider sentence") (citing *State v. Bush*, 875 So.2d 134 (La. App. 2 Cir. 2004)).

**7.   Cumulative error (Claim 6).**

The petitioner's final argument is that he is entitled to habeas corpus relief on "cumulative error" grounds. Rec. Doc. 11, pg. 49.

But he has identified no errors. For that reason, he is not entitled to relief under a cumulative error theory. *See, e.g., Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir.1987) ("Twenty times zero equals zero.")

CONCLUSION AND PRAYER

For the reasons explained above, the habeas corpus petition is without merit. For that reason, Respondent prays that the Court dismiss the instant petition with prejudice and otherwise deny relief.

Respectfully Submitted,

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney
22nd Judicial District
701 N. Columbia Street
Covington, Louisiana 70433
Tel: (985) 809-8398
Email: mcaplan@22da.com

<u>CERTIFICATE OF SERVICE</u>

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

This the <u>24th</u> day of <u>October</u>, 20<u>24</u>, at Covington, Louisiana.

<u>/s/ Matthew Caplan</u>
Matthew Caplan, #31650
Assistant District Attorney