## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RONALD ST. CYRE,** | ) | **CIVIL ACTION** |
| *Petitioner*, | ) | **NO. 24-1281** |
| | ) | |
| | ) | **JUDGE DARREL J. PAPILLION** |
| **-VS-** | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **MARCUS MYERS,** | ) | **EVA J. DOSSIER** |
| **Warden,** | ) | |
| **Correctional Center** | ) | |
| *Respondent.* | | |

---

### REPLY TO STATE'S SUPPLEMENTAL RESPONSE TO PETITION FOR HABEAS CORPUS RELIEF

COMES NOW, through undersigned counsel, Mr. Ronald St. Cyre, who respectfully files this Reply Memorandum in Response to the State's Supplemental Response in Opposition to Petitioner's Application for Habeas Corpus Relief ("Answer"), Rec. Doc. 25. As a result of a series of constitutional violations, Mr. St. Cyre is now serving a thirty-year sentence for a nonviolent offense. Due to the unconstitutional enhancement of his sentence, Mr. St. Cyre is also not eligible to have his sentence reduced under Louisiana's diminution of sentence ("good-time") statute. He is essentially serving a flat-sentence, such that his youngest child could be a college graduate by the time he is released from the custody of the Louisiana Department of Corrections (DOC).

In an effort to avoid repetition of Mr. St. Cyre's May 16, 2024 Amended Petition for Relief under 28 U.S.C. § 2254, this pleading will not re-brief the issues already presented, but will instead focus on responding to the arguments raised by the State in its July 2, 2024 Answer. *See* Rec. Doc. 25.  In turn, Mr. St. Cyre now files the following Response Brief:

1

## I.       Claim 1: Motion to Suppress Evidence

The State cites *Stone v. Powell*, 428 U.S. 465 (1976) arguing that Supreme Court precedent bars federal habeas relief where "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." Rec. Doc. 25 at 5 (citing *Stone*, 428 U.S. at 494). Because the Supreme Court did not clearly define  "full and fair litigation," the circuit courts' interpretation of *Stone* is controlling. In the Fifth Circuit, when a factual dispute exists, full and fair litigation requires both consideration by the fact-finding court and the availability of review by a higher state court. *Morgan v. Estelle*, 588 F.2d 934, 941 (5th Cir.1979) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)). An undisputed factual record requires only full consideration by a state appellate court. *Id.* However, when a factual dispute exists that has not been considered by the trial court, it is possible for federal habeas review because a petitioner's Fourth Amendment claim has not been "exhaustively and persuasively" reviewed. *Id.*

In Mr. St. Cyre's Fourth Amendment claim for review, the record presents factual disputes that the state trial court did not consider when it wrongly determined that the State's search of Prisscilla Vaughn's (Ronald St. Cyre's aunt) vehicle was constitutional. In fact, the state trial court made no factual determinations, and failed to articulate any reasoning as to why it denied Mr. St. Cyre's motion to suppress evidence. *See* Rec. Doc. 16-2 at 58.  Specifically, all the state trial court said at the motion hearing was "[a]ll right. I find probable cause on the preliminary examination.  I deny the motion to suppress evidence and the motion to suppress confession. I'll note your objection to all three of those rulings.  Anything further?" *Id.*

As discussed herein, the state trial court did not properly consider the clear factual disputes in the record, and therefore Mr. St. Cyre's Fourth Amendment claim was not fully and

fairly litigated.  In turn, this Honorable Court is not precluded from considering the merits of Mr. St. Cyre's claim.

### A.    The Marijuana Drug Screen

In this case, on January 9, 2018, Mr. St. Cyre went to his parole officer's office to fill out paperwork so he could transfer his parole from Louisiana to Georgia.  Rec. Doc. 16-2 at 266-67. Mr. St. Cyre's wife drove him to the appointment in Ms. Vaughn's car.  Rec. Doc. 16-3 at 114. Mr. St. Cyre was a passenger in the vehicle, and not the driver, because he was on crutches.  *Id*.

After Mr. St. Cyre finished filling out the paperwork to transfer his parole, , Agent Everly decided to conduct a warrantless search, without reasonable suspicion of a crime, of a vehicle that was not owned nor driven by Mr. St. Cyre.  *See* Rec. Doc. 16-3 at 87–92; Rec. Doc. 16-2 at 58. The search was predicated on the fact that Mr. St. Cyre had tested positive on a marijuana drug screen and was allegedly a victim in a shooting more than two months prior. Rec. Doc. 16-2 at 9.  However, this fact alone is insufficient to justify a warrantless search of a third-party vehicle.

Agent Everly did not have actual knowledge that the vehicle Mr. St. Cyre arrived in was still in the parking lot; he "assumed it was still out there." Rec. Doc. 16-3 at 115. Although Agent Everly viewed Mr. St. Cyre's cell phone and observed a message that indicated a gun may be found in the vehicle, this only happened *after* Agent Everly made the decision to search Ms. Vaughn's car, which does not legally cure the unconstitutional warrantless search of the car. Rec. Doc. 16-2 at 268-69.

At the motions hearing and again at trial, Agent Everly said he texted Agent Lousteau to inquire whether he should search Mr. St. Cyre's car. Rec. Doc. 16-2 at 10, 268–69.  However, in

a clear factual dispute, the only text that Agent Lousteau said that she received from Agent Everly was when he informed her that "he found the gun." Rec. Doc. 16-3 at 139–40.

When the State tried to clean up this testimony, Agent Lousteau again affirmed that she had *no communications* with Agent Everly via text before Agent Everly searched Ms. Vaughn's vehicle without a warrant. *Id.*

A positive drug screen on its own does not give rise to reasonable suspicion that criminal activity **is occurring**—particularly for marijuana.  This is because a casual user of marijuana may test positive for marijuana up to ten days after consumption. *See* U. of Rochester Med. Ctr., Health Encyclopedia, *Cannabinoid Screen and Confirmation (Urine)*, https://www.urmc.rochester.edu/encyclopedia/content.aspx?contenttypeid=167&contentid=canna binoid_screen_urine (last visited Dec. 30, 2024) ("THC can linger on average up to 10 days for a casual user. It stays in your system for 2 to 4 weeks if you use marijuana often, and more than a month if you use it more often."). An officer's articulation of reasonable suspicion to justify a search must be more than an "'inchoate and unparticularized suspicion or hunch' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123–124 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Agent Everly neither testified that Mr. St. Cyre smelled like marijuana nor that he observed Mr. St. Cyre's behavior to indicate that Mr. St. Cyre was under the influence of marijuana at the time of his encounter with him inside of the probation and parole office. Certainly, the positive drug screen, on its own, was sufficient evidence to arrest Mr. St. Cyre without a warrant for violating his parole.[1]  However, there was no suspicion—reasonable or

---

[1] The Louisiana First Circuit pointed out, as a condition of his parole, Mr. St. Cyre did "agree to searches of my person, property, residence, and/or vehicle, when reasonable suspicion exists that I am or have been engaged in criminal activity." *See* La. R.S. 15:574.4.2(A)(2)(i). *State v. St. Cyre*, 2019-0034 (La. App. 1 Cir 12/19/19), 292 So. 3d 88, 98.

otherwise—based on the facts in Agent Everly's possession that a search of a third-party vehicle would reveal evidence of illicit drugs.

Furthermore, the state trial court failed to consider the clear factual dispute before making a blanket ruling that denied Mr. St. Cyre's motion to suppress.  Because the fact-finding court did not consider these factual disputes in its ruling, Mr. St. Cyre's Fourth Amendment claim has not been fully and fairly litigated.  *See* Rec. Doc. 16-2 at 58; *see also Morgan*, 588 F.2d at 941. Consequently, this Honorable Court should review the merits of his claim and determine whether the evidence used to prosecute Mr. St. Cyre from the third-party vehicle was constitutionally seized.

### B.    Mr. St. Cyre's Injury

Similarly, there was no reasonable suspicion that Agent Everly would find a firearm in Mr. St. Cyre's vehicle. Although Agent Everly observed that Mr. St. Cyre was on crutches, the gunshot wound occurred in November—65 days before Mr. St. Cyre's office visit with Agent Everly. Agent Everly's testimony insinuating that Mr. St. Cyre was somehow evading Agent Everly should not be credited.[2] Agent Everly did not feel it was necessary to search Mr. St. Cyre's house or vehicle immediately after the shooting. Incredibly, Agent Everly claims that such necessity arose 65 days later.

Again, as the transcript shows, the state trial court failed to consider the clear factual dispute before making a blanket ruling that denied Mr. St. Cyre's motion to suppress.  Because

---

[2] Despite previously testifying that he had no contact with Mr. St. Cyre or Mrs. St. Cyre in November 2017, Agent Everly documented a phone call with Mrs. St. Cyre on November 20, 2017. Rec Doc. 16-3 at 63–64. Moreover, Agent Everly told Mr. St. Cyre that someone from his office would be visiting his new residence. *Id.* at 70. Agent Everly never instructed anyone to visit Mr. St. Cyre. Agent Everly also testified that he went to Mr. St. Cyre's house on November 27, 2017, but Mr. St. Cyre was not there. *Id.* at 73. Yet Agent Everly testified that he did not note his attempt to visit Mr. St. Cyre in any of his paperwork because "it wasn't relevant." *Id*. But when Agent Everly went to visit Mr. St. Cyre on August 25, 2017, and Mr. St. Cyre was not at home, Agent Everly found that relevant enough to put in his report. *Id.* at 74.

the fact-finding court did not consider these factual disputes, especially around Mr. St. Cyre's injuries, Mr. St. Cyre's Fourth Amendment claim has not been fully and fairly litigated. Consequently, this Honorable Court should review the merits of his claim and determine whether the evidence used to prosecute Mr. St. Cyre from the third-party vehicle was constitutionally seized.

      **C.**      **The Third-Party Vehicle**

      Although parolees have a decreased expectation of privacy, there is no precedent that third parties either share in this decreased expectation of privacy or waive their property rights with respect to governmental intrusions. *See United States v. Knights*, 534 U.S. 112, 121 (2001) (holding a search of a probationers home requires "reasonable suspicion" and "[t]he degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable"). Moreover, the circumstances of this case are particularly unreasonable. It was unreasonable for Agent Everly to decide not to investigate whether Mr. St. Cyre or his wife owned the vehicle, or whether they had regular access to the vehicle.

      Agent Everly testified that he did not know whose car he searched. See Rec. Doc. 16-3 at 87. He did not run the license plate to find out who owned the car. *Id.* He did not check the registration of the car. *Id.* Agent Everly testified that the issue of vehicle ownership was determined by whatever vehicle a parolee was in, despite the fact that he did not even see Mr. St. Cyre *arrive* in the car. *Id.* at 89. However, this policy is not supported by any judicial or statutory precedent, and under these particular factual circumstances does not provide sufficient evidence to support a warrantless search.

Agent Everly failed to do a basic inquiry and therefore possessed no reasonable belief that Ms. Vaughn's vehicle was actually Mr. St. Cyre's vehicle. Agent Everly did not know whether Mrs. St. Cyre was in possession of the car for longer than the trip to his office, and he did not ask her. This is not to say that a warrantless search of a third party's property is always invalid. But based on these specific facts and circumstances — 1) the car did not belong to Mr. St. Cyre; 2) the car was not driven by Mr. St. Cyre; 3) Agent Everly failed to investigate ownership of the vehicle;  and 4) Agent Everly testified that he had no interest in investigating the vehicle's ownership—the search of Ms. Vaughn's car was unreasonable and therefore unconstitutional.

Because Agent Everly failed to do even a *de minimis* investigation, he cannot be in good faith. By Agent Everly's standards, a friend giving a parolee a ride, or a cab, or a bus—literally any third-party vehicle in which a parolee happens to be found—is the property of whichever parolee rode in it, and is therefore subject to a warrantless search.  This cannot be construed as a good-faith mistake by Agent Everly.

Here, the vehicle searched belonged to neither Mr. St. Cyre nor Mrs. St. Cyre. The vehicle belonged to Ms. Vaughn. While there is a lesser expectation of privacy in a vehicle, parole officers violated the United States Constitution when they entered Ms. Vaughn's car and seized evidence without a warrant and without attempting to perform the most cursory of investigations into the vehicle's ownership.

As shown by testimony elicited at the motion to suppress hearing before the state trial court, a clear factual dispute exists.  The state trial court's ruling failed to consider the clear factual dispute before denying Mr. St. Cyre's motion to suppress.  *See* Rec. Doc. 16-2 at 58. Because the fact-finding court did not consider these factual disputes concerning ownership of

the vehicle, and if there was sufficient evidence to search the car, Mr. St. Cyre's Fourth Amendment claim has not been fully and fairly litigated. Consequently, Mr. St. Cyre respectfully asserts that he is eligible for federal habeas review, and this Honorable Court should review the merits of his claim and determine whether the evidence used to prosecute Mr. St. Cyre from the third-party vehicle was constitutionally seized.

**D.    No valid consent was given to the search of the vehicle**

The record presents a clear factual dispute about whetherMrs. St. Cyre provided valid consent to search Ms. Vaughn's vehicle. First, Ms. Vaughn's vehicle was already being searched when Mrs. St. Cyre gave her purported "consent." Second, Agent Everly threatened Mrs. St. Cyre, so her consent—if it could even be characterized as such—was not constitutionally valid.

> i.    *The vehicle was already being searched when "consent" was given.*

Agent Howell testified that he began searching the vehicle while Agent Everly was speaking to Mrs. St. Cyre.[3] Rec. Doc. 16-3 at 121. Agent Everly did not engage in a long conversation with Mrs. St. Cyre. He told her that she would be handcuffed, implied that her baby would be taken away, then asked her where the gun was. *Id.* at 98. ("I remember telling her I would take her baby. It's something I say. I will call the state to take your child....")

> ii.    *Mrs. St. Cyre's statement to Agent Everly was not valid consent.*

Agent Everly located the vehicle and asked Mrs. St. Cyre where the gun was. Rec. Doc. 16-2 at 13. Agent Everly did not *Mirandize* Mrs. St. Cyre nor did he obtain Mrs. St. Cyre's written consent to search the vehicle. *Id.* at 49–50. Mrs. St. Cyre testified that Agent Everly threatened her, saying that she would go to jail if she did not tell him where the gun was. *Id.* at

---

[3]Although Agent Everly was standing next to the rear bumper of the vehicle when Agent Howell was searching the vehicle, Agent Howell disclaimed any knowledge of the interaction between Agent Everly and Mrs. St. Cyre, testifying that he did not hear their exchange. Rec Doc. 16-3 at 4; *also* Rec Doc. 16-3 at 132.

13 (I told her, "I'm not playing. Where's the gun? Tell me now or you're going to go to jail too.").

In contradiction to both her testimony and his own, Agent Everly later stated that he did not tell

Mrs. St. Cyre that he would arrest her, but he acknowledged saying he "would put her in cuffs."

*Id.* at 46–47. Agent Everly further threatened Mrs. St. Cyre that her baby would go into state

custody. *Id.* Agent Everly "clarified" that it was not a direct threat because he told Mrs. St. Cyre

"that if she goes to jail, her baby will probably go into State custody." *Id.* However, during trial,

Agent Everly changed his testimony to state that he would call the State to pick up Mrs. St.

Cyre's child. Rec. Doc. 16-3 at 98.

After this series of threats, Mrs. St. Cyre acquiesced and stated that there was a gun under

the driver's seat. Rec. Doc. 16-2 at 50. Agent Everly interpreted this as consent to search the

vehicle, rather than using this statement as evidence to obtain a search warrant. *Id.*

Mrs. St. Cyre's statement to Agent Everly about the location of the gun cannot be

construed as a valid consent to search. Importantly, Agent Howell testified that he was already

searching the car when Agent Everly was talking with Mrs. St. Cyre. Mrs. St. Cyre's subsequent

"consent to search" is not curative of Agent Howell's entry into the vehicle without Mrs. St.

Cyre's consent—and definitely without the owner, Ms. Vaughn's, consent. Mrs. St. Cyre

described the location of the gun after Agent Everly threatened to "throw her in jail" and further

threatened that her infant would be taken away from her. This conduct—although routine for

Agent Everly—was coercive and unconscionable. *Id*. at 47 ("[T]hat's something I tell them

basically sometimes.")*; see also* Rec. Doc. 16-3 at 98 ("I remember telling her I would take her

baby. It's something I say."). Even if Mrs. St. Cyre informed Agent Everly of the whereabouts of

the gun before the search commenced, Mrs. St. Cyre's statement was neither voluntary nor can it

be construed as giving valid consent to search.

## II.    Claim 2:  *Miranda* Violation

The state incorrectly argues that Mr. St. Cyre is not entitled to federal habeas relief for a violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) because the Louisiana First Circuit Court of Appeal found "no error in the trial court's conclusion that the defendant was Mirandized before making the inculpatory statement." Supp. Response to Petition for Habeas Corpus Relief, Rec. Doc. 25 at 16–18 (quoting *State v. St. Cyre*, 19- 0034 (La. App. 1 Cir. 12/19/19), 292 So.3d 88, 105)).

However, Mr. St. Cyre respectfully contends that he is eligible for habeas relief under § 2254(d)(2) because the state court's adjudication of his claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Further, § 2254(d)(1) allows this Court to review his *Miranda* claim because the state appellate court's decision involved an unreasonable application of clearly established Federal law. A state court decision falls under § 2254(d)(1), if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). While state court determinations of factual issues enjoy a presumption of correctness, Mr. St. Cyre has rebutted this presumption by clear and convincing evidence, pursuant to 28 U.S.C. § 2254(e)(1). When reviewing a *Miranda* claim, courts should look to see if a statement is a product of a custodial interrogation, and if the State can show that the person was

> warned **prior to any questioning** that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*See Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (emphasis added).

*Miranda* warnings must be given when there is an interrogation, i.e. questioning that is likely to elicit an incriminating response. *See Miranda*, 384 U.S. at 476–77.  Even in the absence of physical coercion, a police officer's dominance in a setting of custodial interrogation creates grave risks.  *Id*. at 451. "Coercion is determined from the perspective of the suspect." *Illinois v. Perkins*, 496 U.S. 292, 296 (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)). "[W]hen *Miranda* warnings are inserted in the midst of [a] coordinated and continuing interrogation, they are likely to mislead and depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Missouri v. Seibert*, 542 U.S. 600, 613-14 (2004).  In such circumstances, a court should consider the following facts when determining whether a midstream *Miranda* warning is sufficient:

> 1)   the completeness and detail of the questions and answers in the first round of interrogation;
>
> 2)  the overlapping content of the two statements;
>
> 3)  the timing and setting of the first and the second;
>
> 4)  the continuity of police personnel; and
>
> 5)   the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id*. at 615. When considering the foregoing conditions, when a mid-interrogation warning "threatens to thwart *Miranda*'s purpose of reducing the risk that a coerced confession would be admitted," it should be considered inadmissible. *Id*. at 617.

In a habeas context, the Supreme Court has noted that the standard for rebuttal set by § 2254(e)(1) might be "demanding but [is not] insatiable." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Deference to the Louisiana First Circuit "does not by definition preclude relief." *Id*. (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). While the *Miller-El* cases included statistical evidence that rebutted the presumption against a *Brady* violation, that kind of evidence

is not needed here because the evidence offered by the state is so plainly contradictory on its face.

As noted in Mr. St. Cyre's habeas petition, with this particular claim, Agent Everly did not dispute that he started a custodial interrogation of  Mr. St. Cyre without giving him a *Miranda* warning. Rec Doc. 16-2 at 16. It is not clear, however, what transpired next. According to his own testimony, Agent Everly stated that he began questioning Mr. St. Cyre, but then stopped and read him his *Miranda* rights after being prompted by a fellow agent who "float[ed] by the office." *Id.* Agent Everly alleges that Mr. St. Cyre then affirmed that he understood his rights, made a statement specifically regarding the gun found in his vehicle, expressed contrition and a desire to help law enforcement. *Id.* at 17–18.

Importantly, all of this allegedly transpired before Agency Everly charged Mr. St. Cyre with parole violations related to a positive drug screen and placed him under arrest. *Id.* at 18–19. He was subsequently transported to jail. *Id.*  Only at this point did Mr. St. Cyre allegedly sign the *Miranda* form. *Id. See also, St. Cyre*, 292 So.3d at 104.

As well, the documentary evidence offered by Agent Everly directly contradicts his testimony.  According to Agent Everly's records, he arrested Mr. St. Cyre at 2:00 P.M. and advised him of his rights at 2:00 P.M. Rec. Doc. 16- 3, at 95–97. If the *Miranda* warning was simultaneous with the arrest, there was no time for Mr. St. Cyre to affirm that he understood his rights, make a statement, then express contrition while being *Mirandized*.

While the First Circuit affirmed the trial court's "cho[ice] to believe…Agent Everly," it is not entirely clear form the Court's decision  what they actually believed—both regarding the sequence of events or what portion of the confession was made before and which after Mr. St. Cyre was *Mirandized*. *St. Cyre*, 292 So.3d at 105. To meet the clear and convincing standard, Mr.

St. Cyre must give the factfinder an "abiding conviction that the truth of [his] contentions are "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (quoting C. McCormick, Law of Evidence § 320, p. 679 (1954)). The naked admission that a portion of his statement was given pre-*Miranda,* combined with two impossibly irreconcilable versions of events meet this bar.

The State also contends that state courts recited and applied *Miranda v. Arizona*, 384 U.S. 436 (1966) correctly by identifying and enforcing the requirement that a suspect in custody be advised of his rights prior to the commencement of custodial interrogation. Supp. Response to Petition for Habeas Corpus Relief, Rec. Doc. 25 at 7. This argument is wholly conclusory because the state appellate court's decision involved an unreasonable application of *Miranda,* which is clearly established Federal law. In turn, § 2254(d)(1) permits this Honorable Court to review his claim.

In order for Mr. St. Cyre's confession about the gun to be admissible, the state bears the burden of showing that that "defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Tague v. Louisiana*, 444 U.S. 469, 470 (1980). Further, whether a suspect is in custody and therefore entitled to *Miranda* warnings is a mixed question of law and fact qualifying for independent review. *Thompson v. Keohane*, 516 U.S. 99, 102 (1995). As such, this honorable Court owes the state court no presumption of correctness.

The Louisiana First Circuit Court of Appeals stated the holding in *Miranda* while considering Mr. St. Cyre's claim. It also found Agent Everly's conflicting testimony and documentation adequately met the government's burden of "prov[ing] the confession's admissibility." *St. Cyre*, 292 So.3d at 102 (citing La. Code Crim. P. art. 703(D)). This was, in

part, because Mr. Everly's supervisor, Agent Lousteau, testified and corroborated Everly's claim that he *Mirandized* Mr. St. Cyre before questioning him about the gun. *Id.* at 105. However, the record shows that Agent Lousteau's testimony also contradicts Agent Everly's on this point; in her version of events, no questioning occurred before Mr. St. Cyre was *Mirandized*. Rec. Doc. 16-3 at 137. In upholding the trial court's ruling denying the motion to suppress the defendant's inculpatory statement, the First Circuit also accorded "great weight" to "the trial court's conclusions." *St. Cyre*, 292 So.3d at 105.

As stated in Mr. St. Cyre's habeas petition, however, it is impossible to determine from the record when, if ever, Mr. St. Cyre was properly *Mirandized*. The First Circuit Court of Appeals unreasonably applied *Miranda* when determining that the government had met its burden by using contradictory testimony with a lack of additional corroborating evidence, and inappropriately deferred to the trial court's determination on a mixed question of fact and law.

Therefore it is clear that the last reasoned state court decision concerning this claim was both "contrary to clearly established federal law," as well as based on an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2). Because the last reasoned state court decision did not reasonably apply *Miranda*, the deferential standard set in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) should not apply,[4] and this Court should review this claim *de novo* rather than providing deference to the state court decision. *Williams v. Taylor*, 529 U.S. at 405-06; *see also Martin v. Grosshans*, 424 F.3d 588 (7th Cir. 2005).

AEDPA applies only to claims that were actually 'adjudicated on the merits in State court proceedings." *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing 28 U.S.C. § 2254(d)). When a proper *Miranda* assessment is reasonably applied to the facts of Mr. St. Cyre's

---

[4] Codified in 28 U.S.C. § 2254.

case, it is clear that these facts clearly "rebuts the presumption of [the state court's] correctness," and demonstrates that the State violated *Miranda* when Agent Everly conducted his custodial interrogation of Mr. St. Cyre. *Miller-El v. Cockrell*, 537 U.S. at 341.

### III.    Claim 3: Ineffective Assistance of Trial Counsel

Mr. St. Cyre's first ineffective assistance of counsel claim arises from the fact that his trial counsel did not object to the State's cross-examination of his wife, Chelsea St. Cyre, about Mr. St. Cyre's specific prior acts. Specifically, trial counsel failed to object on the grounds that the state's character evidence failed to satisfy the factors established by *State v. Johnson*, 389 So. 2d 372, 376-77 (La. 1980). The State contends that the petitioner's *Strickland* claim fails because "trial counsel discussed the Johnson decision in its argument to the Court during trial." Rather than address whether this failure constitutes objectively deficient performance that prejudiced Mr. St. Cyre's case, the State instead disputes the very premise of the claim. Supp. Response to Petition for Habeas Corpus Relief, Rec. Doc. 25 at 8–9. *See also, Strickland v. Washington*, 466 U.S. 668 (1984). The State's argument is not supported by the record and directly contradicts the First Circuit Court of Appeal determination.

Questions about specific prior acts are only permitted under Louisiana Code of Evidence, art. 608, when a character witness has testified as to another witness's character for truthfulness or untruthfulness. As well, *State v. Johnson*, 389 So.2d 372 (La.1980), supplements the state rules of evidence by delineating additional safeguards regarding the prosecution's cross examination of character witnesses. As laid out in Mr. St. Cyre's habeas petition, a five factor test must be satisfied to permit the use of prior bad acts. *See id.* at 376–77. The Supreme Court has noted that evidence of a defendant's specific prior crimes is generally prohibited because it can "overpersuade" the jury to "prejudge" a defendant, "deny[ing] him a fair opportunity to

defend against a particular charge.... disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson v. United States*, 335 U.S. 469, 476 (1948).

The State is correct in noting that Mr. St. Cyre's trial counsel "discussed" *Johnson* during trial. *See* Rec. Doc 16-3 at 180. However, a plain reading of the transcript shows that trial counsel failed to articulate any of the factors; instead he sought to distinguish the testimony in *Johnson* from Chelsea St. Cyre's testimony because he asserted that she was a *fact* witness rather than a *character* witness. *Id.* Although Mr. St. Cyre's appellate lawyer (who was not the same as trial counsel) later raised three of the *Johnson* factors on appeal, this was the first time his counsel  specifically objected on the grounds that the court did not consider whether there was reasonable likelihood of generalized knowledge of the defendant's previous misconduct within his community; did not consider whether the cross-examination concerned the specific trait involved in possession of a firearm by a convicted felon; and did not determine that the examination would be in proper form. *See St. Cyre,* 292 So.3d at 110 (citing *Johnson,* 389 So.2d at 376). Louisiana's First Circuit Court of Appeal specifically noted that the argument was moot on appeal precisely because trial counsel failed to preserve the error for appellate review, writing Mr. St. Cyre's "[trial counsel] made no objections regarding any of the three guidelines that he now asserts on appeal were not considered by the trial court." *Id.*

While Mr. St. Cyre's trial counsel clearly objected to the introduction of impermissible and prejudicial propensity evidence, he failed to ground his objection in clearly established law. In turn, the jury thus heard about a previous shooting, prior gun possession, and marijuana use.

On a habeas review of an ineffective assistance claim, "federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (internal quotations omitted). It is, however, impossible to discern a strategic

16

rationale for trial counsel's failure to object to highly prejudicial propensity evidence on all available grounds. The use of such evidence has been carefully limited by both the Federal Rules of Evidence and the Louisiana Code of Evidence precisely because of its tendency to prejudice and confuse a jury. Trial counsel's additional failure to seek a limiting instruction regarding Chelsea St. Cyre's testimony only underscores the lack of sound strategy, even if afforded the benefit of the doubt.

As evidenced by the record, the last reasoned state court opinion did not reasonably apply *Strickland*, AEDPA's deferential standard of review should not apply, and this Court should review this claim *de novo* rather than providing deference to the state court decision. *Williams*, 529 U.S. at 405–6 (2000); *see also Martin*, 424 F.3d at 592. AEDPA applies only to claims that were actually 'adjudicated on the merits in State court proceedings." *Harris v. Thompson*, 698 at 623 (citing 28 U.S.C. § 2254(d)).

When a *Strickland* analysis is reasonably applied to the facts of Mr. St. Cyre's case, it is clear that these facts clearly "rebut[] the presumption of [the state court's] correctness," and demonstrates that Mr. St. Cyre was unconstitutionally prejudiced by his counsel's deficient performance. *Miller-El v. Cockrell*, 537 U.S. at 341. Mr. St. Cyre, in turn, requests that this court issue a writ of habeas corpus so that he may be discharged from his unconstitutional confinement or constraint, or grant such other relief as may be appropriate, and to dispose of this matter as law and justice requires.

## IV.    Claim 4: Ineffective Assistance of Counsel at Sentencing

The State contends that "[t]he state courts determined that limiting the petitioner's sentencing exposure was a reasonable course of action in light of the petitioner's history of felony convictions. The adjudication of this claim does not present an unreasonable application

of the standard of *Strickland v. Washington*, 466 U.S. 668 (1984)." Supp. Response to Petition

for Habeas Corpus Relief, Rec. Doc. 25 at 15.

However, the State fails to account for the fact that *Strickland* also applies to plea

bargaining:

> The reality is that plea bargains have become so central to the administration of
> the criminal justice system that defense counsel have responsibilities … that must
> be met to render the adequate assistance of counsel that the Sixth Amendment
> requires in the criminal process at critical stages. Because " 'ours is for the most
> part a system of pleas, not trials,' … it is insufficient simply to point to fair trials
> as a backstop that inoculates any errors in the pretrial process…. [plea bargaining]
> is not some adjunct to the criminal justice system; it is the criminal justice
> system."

*Missouri v. Frye*, 566 U.S. 134, 143–44 (2012) (internal citations and quotations

omitted). *See also, Lafler*, 566 U.S. 156 (2012).

Furthermore, such deference to trial counsel's strategy must be viewed within the

reasonableness "of the adequacy of the investigations supporting it." *Wiggins v. Smith*, 539 U.S.

510, 521 (2003). Trial counsel's choices can only be understood as strategic to the extent that

their limited investigation is supported by "reasonable professional judgements." *Id.* at 512.

Consequently, this Circuit is

> mindful that 'the range of reasonable professional judgments is wide,' [and that]
> courts recognize that '[i]neffectiveness is generally clear in the context of a
> *complete failure to investigate because counsel can hardly be said to have made a*
> *strategic choice against pursuing a certain line of investigation when he has not*
> *yet obtained the facts on which such a decision could be made.'*

*Anderson v. Johnson*, 338 F.3d 382, 391 (5th Cir. 2003) (emphasis added).

Mr. St. Cyre's sentencing counsel did not simply make a strategic choice not to present

mitigation evidence or conduct a limited investigation—he failed to conduct any kind of

mitigation investigation.  By failing to know anything about his client's social history, he was

totally unprepared to negotiate with the State during the habitual offender proceeding. As well,

when discussing the potential plea with the trial court judge, sentencing counsel had literally no knowledge about Mr. St. Cyre's past. As in *Wiggins,* "counsel's failure to prepare a social history did not meet the minimum standards of the profession." *Wiggins*, 539 U.S. at 527 (internal quotations omitted). His failure to investigate without doubt meets the first prong of *Strickland*.

In addition, Mr. St. Cyre's appellate counsel admits in an affidavit that he did no mitigation investigation for Mr. St. Cyre.  Rec. Doc. 16-6 at 881–82.

Appellate counsel enrolled in the state district court within a time frame that he could have filed a motion to reconsider sentence.  *See* Rec. Doc. 16-1 at 211–12. Again, the mitigation evidence produced by Mr. St. Cyre's post-conviction mitigation investigator should have been presented in a Motion for Sentence Reconsideration.  Without such evidence in the trial court record, the appellate court was precluded from considering an excessive sentence claim.

As discussed in Mr. St. Cyre's amended habeas petition, sentencing and appellate counsel's failures prejudiced him not only during the plea process, but also because he was precluded from raising an excessive sentence claim.

The state trial court opinion even acknowledges that "the record does not contain any reference to mitigation evidence or a motion for reconsideration." Rec. Doc. 16–7 at 32. However, despite this admission, the state trial court fails to account for how such mitigation evidence could have been used during the plea negotiation process, or to support the filing of a motion for reconsideration.  Instead, the trial court simply focuses on the fact that a plea bargain was reached between the parties.  *Id*.

Focusing solely on the fact that a plea bargain was reached, and then summarily dismissing Mr. St. Cyre's claims without an evidentiary hearing to determine if this mitigation could have impacted the outcome of his case, exemplifies that the state court misapplied federal

law in this case. Therefore, the last reasoned state court decision did not reasonably apply *Strickland*, AEDPA's deferential standard of review should not apply, and this Court should review this claim *de novo* rather than providing deference to the state court decision. *Williams*, 529 U.S. at 405–06. When a *Strickland* analysis is reasonably applied to the facts of Mr. St. Cyre's sentencing proceedings, it is clear that these facts clearly "rebuts the presumption of [the state court's] correctness," and demonstrates that Mr. St. Cyre was unconstitutionally prejudiced by his counsel's deficient performance. *See Miller-El*, 537 U.S. at 341. Mr. St. Cyre in turn, requests that this court issue a writ of habeas corpus so that he may be discharged from his unconstitutional confinement or constraint, or grant such other relief as may be appropriate, and to dispose of this matter as law and justice requires.

## V.    Claim 5: Due Process Violation During Habitual Offender Proceeding

Mr. St. Cyre alleges that his right to due process during his habitual offender proceedings was violated because the state trial court judge failed to inform him of his rights under Louisiana law. These rights include the statutory right to remain silent, his right to a hearing, and his right that the State must prove its allegation that he is a habitual offender." La. R.S. § 15:529.1(D).

The last reasoned state court judgment simply stated that "the Court informed the Defendant of all of his rights vis-a-vis that Bill. *See* Rec. Doc. 16-7 at 24. Louisiana courts have "declined to adopt as a constitutional prerequisite to a valid admission of identity at a multiple offender proceeding a procedure analogous to the Boykin colloquy which must accompany a valid plea of guilty." *State v. Gonsoulin*, 2003-2473 (La. App. 1 Cir 06/25/04), 886 So. 2d 499, 502. This application of *Gonsoulin* is an unreasonable application of clearly established federal law. The plea process during a habitual offender proceedings is akin to a guilty plea, which requires a *Boykin* colloquy. The ramifications of a guilty plea at habitual offender proceeding in

Louisiana are just as serious as those in a *Boykin* proceeding. In this case, Mr. St. Cyre's sentence was increased from a fifteen year sentence where he was only required to serve twenty-five percent of his sentence, to a thirty year sentence where he is not eligible for any good-time. Mr. St. Cyre plead guilty at his habitual offender proceeding without being informed AT THIS HEARING about the significant rights he was foregoing not only at the hearing, but also on appeal. Mr. St. Cyre in turn, requests that this court issue a writ of habeas corpus so that he may be discharged from his unconstitutional confinement or constraint, or grant such other relief as may be appropriate, and to dispose of this matter as law and justice requires.

**Claim 6: Ex Parte Communication with the Jury**

The State's attempt to overcome allegations of improper ex parte communications during jury deliberations rests almost entirely on an extensive quotation of the state district court's determination on Mr. St. Cyre's post-conviction application. There the same judge that Mr. St. Cyre alleges had improper communications with the jury stated that Mr. St. Cyre's "claim has no merit." Rec. Doc. 16-7 at 27. Notably, this state court judgment is replete with testimony from the judge arguing that he did nothing wrong. *Id*. (stating "this is exactly what happened here."). In addition, the Court makes several presumptions about the truthfulness and accuracy of the affidavit testimony provided by Mr. St. Cyre's investigator. *Id*. The same trial court judge even contests whether that the juror statements taken from the investigator are from actual jurors. *Id*. This biased response demonstrates that this particular judge should have recused himself so that he could testify at an evidentiary hearing about this claim.

Mr. St. Cyre respectfully contends that he is eligible for habeas relief pursuant to § 2254(d)(2) because the last reasoned state court adjudication of this particular claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding. Further, the state trial court's decision involved an unreasonable, and extremely biased, application of clearly established Federal law under § 2254(d)(1). While state court determinations of factual issues enjoy a presumption of correctness, Mr. St. Cyre has rebutted this presumption by clear and convincing evidence, pursuant to § 2254(e)(1). Further, if a state court has not made factual findings regarding the *effect* of ex-parte communication, this Honorable Court owes no deference. *Oliver v. Quarterman*, 541 F.3d 329, 343 (5th Cir.2008) ("[I]f the state court does not make factual findings regarding the effect of an external influence on the jury, then we simply conduct a harmless error analysis using the Brecht standard without having to defer to any state court findings.").   In denying the very existence of ex-parte communication, the state district court never determined whether the such communication prejudiced the jury's decision. Consequently, Mr. St. Cyre asks that this Honorable Court consider the merits of his claim *de novo*.

## VI.    Claim 7: Cumulative Error

The State's only argument with this claim is that Mr. St. Cyre has identified no errors, and thus he is not entitled to relief.  *See* Rec. Doc. 25 at 16.  However, as clearly identified in his amended habeas petition, Mr. St. Cyre has in fact identified six significant constitutional errors, which, taken together, question whether he is in fact guilty of the alleged crime of being a felon in possession of a firearm.

The application of a cumulative error claim is especially uncommon when the State presents substantial evidence of guilt.  *See United States v. Neal*, 27 F.3d, 1035 1052 (5th Cir. 1994). However, in this case, the State had to prove its allegations by making the argument that Mr. St. Cyre was in constructive possession of the firearm, because when he was arrested the

firearm was under the driver's seat, wherein he was clearly the passenger in the car that took him to his appointment at the probation and parole office.

As discussed herein, the last reasoned state court decision concerning this claim and other post-conviction claims was both "contrary to clearly established federal law," and also based on an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). As well, the state court "unreasonably applied" the facts presented by Mr. Cyre in his appeal when it determined his cumulative error mandates that Mr. St. Cyre's conviction get vacated. *Williams*, 529 U.S. at 406. In this case, considering all of the evidence presented in Mr. St. Cyre's post-conviction application, as well as his legal claims raised during his appeal, it is abundantly clear that Mr. St. Cyre's trial and sentencing proceeding was riddled with constitutional error, and that the state court's reviewing these constitutional errors did not properly apply federal constitutional principles. **If there is a case where cumulative error requires a conviction's reversal, this is the one.**

Respectfully Submitted,

*/s/ Emily H. Posner*
La. Bar No. 35284
4930 Washington Avenue
Suite D
New Orleans, Louisiana 70125
(504) 233-4237
ep@emilyposnerlaw.com

*Counsel for Ronald St. Cyre*
