# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RONALD ST. CYRE,** | ) | **CIVIL ACTION** |
| *Petitioner*, | ) | **NO. 24-1281** |
| | ) | |
| | ) | **JUDGE DARREL J. PAPILLION** |
| **-VS-** | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **MARCUS MYERS,** | ) | **EVA J. DOSSIER** |
| **Warden,** | ) | |
| **Correctional Center** | ) | |
| *Respondent.* | ) | |

## PETITIONER'S WRITTEN OBJECTIONS TO MAGISTRATE REPORT AND RECOMMENDATIONS

**COMES NOW** petitioner Mr. Ronald St. Cyre, through undersigned counsel, to file the foregoing objections to the Honorable Magistrate's Report and Recommendations (R&R) pursuant to Federal Civil Rule of Procedure 72(b)(2).

Mr. St. Cyre has now served nearly eight years for a crime after the State obtained his conviction unconstitutionally. If this Honorable Court does not intervene, due to Louisiana's sentencing laws, Mr. St. Cyre will serve almost the entirety of his thirty-year sentence for a non-violent crime. His children will be grown and he will be elderly, simply because the State claims he illegally possessed a firearm due to his conviction status.

However, Mr. St. Cyre's habeas petition reveals that his constitutional rights to due process, an impartial jury, effective assistance of counsel, and to be free from cruel and unusual punishment were violated during his criminal proceeding, trial and sentencing. The State Court Record (SCR) demonstrates that Mr. St. Cyre's trial, sentencing and appellate attorneys provided constitutionally ineffective representation during his trial, sentencing and appeal. The SCR also shows that the trial court judge violated Mr. St. Cyre's due process rights by failing to properly

1

inform him of his rights during his habitual offender proceeding and by communicating ex parte communication with his jury.

Reviewed both individually and cumulatively, each of Mr. St. Cyre's post-conviction claims as described herein, demonstrates that his conviction was obtained in violation of the US Constitution. Each of these claims should be heard on the merits, and ultimately his conviction should be vacated and his sentence set aside.

Resultantly, respectfully requests that this Honorable Court reject the Magistrate's Report and Recommendations, and grant Mr. St. Cyre the habeas relief to which he is entitled as outlined herein.

## A. STANDARD OF REVIEW

### a. State Courts Overlooked Some of Mr. St. Cyre's Claims and He is Entitled to *De Novo* Review of His Habeas Claims

The R&R correctly observes that Title 28 U.S.C. § 2254(d)(1) and (2), as amended by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of fact and law. Rec. Doc. 35 at 7. The R&R also notes that AEDPA permits *de novo* review in "rare cases." *Id*. at 10; *see also Johnson v. Williams*, 568 U.S. 289, 303 (2013) (citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)).

However, when a petitioner's claim is overlooked in state court, they have an "unencumbered opportunity" to present their case in federal court. *Id.* citing 28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, and so we examine this element of the *Strickland v. Washington*, [466 U.S. 668 (1984)] claim de novo[.]") (internal citations omitted); *also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("[O]ur review is not

circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the Strickland analysis.").

In order to determine if *de novo* review is appropriate, the federal court must assess whether the "last state court decision that adjudicated the petitioner's claim on the merits." *See Brown v. Davenport*, 596 U.S. 118, 141-42 (2022); *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014). A habeas judgement is rendered on the merits "only if it was 'delivered after the court . . . heard and evaluated the evidence and the parties' substantive arguments.'" *Johnson v. Williams,* 568 U.S. 289, 302 (2013) (quoting Black's Law Dictionary 1199 (9th ed. 2009)). When the state "standard is less protective or the federal precedent was mentioned in passing," a petitioner may rebut presumption that a state court adjudicated a claim on its merits. *Id.* at 290 (referencing See *Coleman* v. *Thompson*, 501 U.S. at 739.

> **b.  Mr. St Cyre's claims that were adjudicated on the merits in state court still entitle him to relief pursuant to 28 U.S.C. § 2254(d).**

Conversely, when claims are adjudicated on the merits in state court, the petitioner is entitled to relief if the state court's adjudication of the claims: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A decision is "contrary to … clearly established Federal law, as determined by the Supreme Court of the United States … if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. at 412-13. A decision "involves an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States … if

the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court's findings of fact are presumed to be correct unless the petitioner rebuts the presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## ARGUMENT

### A. OBJECTION 1: The Magistrate Improperly Concluded that Mr. St. Cyre was Afforded a Full and Fair Opportunity to Litigate his Fourth Amendment Claim in State Court.

#### a. *This Court Should Not Rely on Stone v. Powell*

##### i. *Stone* **should be overruled**

The R&R fails to conduct any merits analysis of this claim because the Magistrate states that Mr. St. Cyre "was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state courts, *Stone* bars this Court from considering that claim." Rec. Doc. 35 at 19 (citing *Stone v. Powell*, 428 U.S. 465 (1976)). However, Mr. St. Cyre contests that the *Stone* bar is not applicable to his case for the following two reasons: 1) *Stone* is antiquated and should be relied on by this Court; and alternatively 2) Mr. St. Cyre was not provided a "full and fair opportunity" to raise this error on appeal.

Mr. Cyre contends that this Court should not bar habeas review of his Fourth Amendment claim due to *Stone* for several reasons. First, the Supreme Court issued *Stone* twenty-years before Congress passed AEDPA because it determined that maintaining federal habeas review of Fourth Amendment claims were "outweighed by the acknowledged costs to other values vital to a rational system of criminal justice." *Stone v. Powell*, 428 U.S. 465, 494 (1976). However, AEDPA vitiates these concerns *Stone* outlined because it now provides an appropriate framework and standard of review for a federal habeas court to review a Fourth Amendment

claim.  An absolute bar to federal review is no longer necessary, and AEDPA allows a court to address only the most egregious Fourth Amendment violations, such as the violations in this case, that must be able to be reviewed in order to uphold the democratic values of our country's constitution.

Second, *Stone* needs to be reviewed because its holding directly conflicts with U.S. CONST. art. I, § 9, cl. 2, which prohibits the suspension of the right of habeas corpus.  *Stone* wrongly suspends a petitioner's right to habeas corpus review of a Fourth Amendment violation.

Lastly, *Stone* needs to be reviewed because its holding predates significant changes in this country's criminal justice system. Since *Stone*, this country has undergone unprecedented and consequential changes to the manner in which it polices, adjudicates and sentences criminal behavior.

> In 1972, the imprisonment rate was 93 per 100,000 people. The prison expansion that commenced in 1973 reached its peak in 2009, achieving a seven-fold increase over the intervening years. Between 1985 and 1995 alone, the total prison population grew an average of eight percent *annually*. And between 1990 and 1995, all states, with the exception of Maine, substantially increased their prison populations, from 13% in South Carolina to as high as 130% in Texas. The federal system grew 53% larger during this five-year period alone.

Ashley Nellis, Sent'g Project, Mass Incarceration Trends 1 (2024), https://www.sentencingproject.org/app/uploads/2024/05/Mass-Incarceration-Trends.pdf.    By 2022, the rate of imprisonment of sentenced individuals per 100,000 U.S. residents had more than tripled since 1972 to 355. E. Ann Carson, U.S. Dep't Just, Prisoners in 2022: Statistical Tables 1 (2024), https://bjs.ojp.gov/document/p22st.pdf. Put simply, the country and its incarceration system has significantly changed since the Supreme Court published *Stone*.  The opinion is antiquated and the Courts should reconsider its relevance in 2025.  Mr. St. Cyre argues that it is no longer appropriate to permit zero federal habeas review of state court applications of

Fourth Amendment claims. Consequently, Mr. St. Cyre urges this Honorable Court to not apply *Stone* in this matter. Instead, this Court should look to AEDPA for guidance and review his Fourth Amendment claims using a *de novo* standard.

### ii. AEDPA's *De Novo* standard should be applied

Regarding Mr. St. Cyre's Fourth Amendment claim, this Honorable Court should review this claim *de novo* rather than apply AEDPA deference. As correctly identified by the Magistrate Judge, here the last reasoned court judgment is the Louisiana First Circuit Court Judgment in *State v. St. Cyre*, 292 So.3d 88 (La. App. 1st Cir. 2019), as the Louisiana Supreme Court adjudicated this claim "without assigning additional reasons." *See* Rec. Doc. 35 at 17.

However, Mr. St. Cyre objects to the Magistrate's interpretation of this First Circuit opinion. Mr. St. Cyre argues that his Fourth Amendment claim should be reviewed *de novo* because the last reasoned state court judgment did not adjudicate this claim on the merits. Rather it adjudicated this claim based on a Louisiana statutory standard that is "less protective" than the Fourth Amendment. When evaluating the First Circuit's opinion, it is clear that it did not rely on any federal precedent to review Mr. St. Cyre's Fourth Amendment claim. Instead, it conducted its "reasonable suspicion" analysis within the context of a state statute, La. Code Crim. Proc. Ann. art. 15:574.4.2. *State v. St. Cyre*, 2019-0034 (La. App. 1 Cir. 12/19/19), 292 So. 3d 88, 98–99.

This statute permits the committee on parole to require a parolee, like Mr. St. Cyre, to "agree to searches of person, property, residence, or vehicle, when reasonable suspicion exists that criminal activity has been engaged in while on parole." *See* La. Code Crim. Proc. Ann. art. 15:574.4.2. In turn, when the Louisiana First Circuit's opinion is reviewed, it is abundantly clear that that court's review of Mr. St. Cyre claim is done purely within the context of his contractual

6

agreement with the committee on parole pursuant to La. Code Crim. Proc. Ann. art. 15:574.4.2..

While the First Circuit mentions the Fourth Amendment "in passing," **it fails to conduct any**

**analysis** with any federal precedent about this claim. *Coleman*, 501 U.S. at 739.  In fact, the

opinion rests overwhelmingly on the Court's interpretation of what is considered "reasonable

suspicion" as referenced in the parole statute.  The only  Fourth Amendment analysis is passing

reference to lack of a state of mind requirement for reasonable suspicion. *St. Cyre*, 292 So. 3d at

98 (citing *Whren v. United States*, 517 U.S. 806 at 813 (1996) ("Subjective intentions play no

role in ordinary, probable cause Fourth Amendment analysis.")).  Consequently, it is clear that

Mr. St. Cyre should have his claim reviewed *de novo* because the last reasoned state court

opinion did not review this claim on its merits.  *Id*.

> ### iii.    Alternatively, even under *Stone*, Mr. St. Cyre is entitled to review of his Fourth Amendment claim because the state court did not fully and fairly consider it.

Accordingly, the R&R cites the *Stone v. Powell* bar when it considered the introduction of

illegally obtained evidence in a habeas petition if the state provided a petitioner with a "full and

fair opportunity" to raise this error at trial and on appeal. Rec. Doc. 35 at 17–18 (citing 428 U.S.

465, 494 (1976)). The Fifth Circuit has clearly held that "'full and fair consideration' of a Fourth

Amendment claim [] include[s] at least one evidentiary hearing in a trial court and the

availability of meaningful appellate review when there are facts in dispute, and full consideration

by an appellate court when the facts are not in dispute." *Caver v. Alabama*, 577 F.2d 1188,

1191–92 (5th Cir. 1978).

Regarding Mr. St. Cyre's Fourth Amendment claim, the record presents factual disputes

that neither the state trial court, Louisiana Appellate Court, nor the Louisiana Supreme Court

considered when it determined that the State's search of a third-party vehicle was constitutional.

Specifically, the state trial court made no factual determinations and failed to articulate any reasoning as to why it denied Mr. St. Cyre's motion to suppress evidence. *See* Rec. Doc. 16-2 at 58. In fact, all the state trial court judge stated was "all right. I find probable cause on the preliminary examination. I deny the motion to suppress evidence and the motion to suppress confession. I'll note your objection to all three of those rulings. Anything further?" *Id.*

On appeal, the Louisiana First Circuit Court of Appeals found that the positive drug screen alone provided law enforcement with reasonable suspicion that Mr. St. Cyre had committed a crime. *State v. St. Cyre*, 292 So. 3d 88, 98 (La. App. 1st Cir. 2019). As discussed *supra*, this decision was rooted in analysis of Louisiana statute rather than Fourth Amendment precedent. In addition, the appeals court also found that Agent Everly was not required to obtain consent from either Mr. St. Cyre or his wife Chelsea to search the vehicle because, as a parolee, Mr. St. Cyre was required to consent to searches prompted by reasonable suspicion. *Id.* at 100. Again, as discussed *supra*, this state appellate court decision turned on Louisiana statute rather than the Fourth Amendment.

The hearing at the state trial court demonstrates that there are several essential facts in dispute with regards to this claim. For instance, In Mr. St. Cyre's case, there are facts in dispute and the trial court never considered the legality of a third-party search or whether any valid consent was given to search the vehicle. Rec. Doc. 16-2 at 58. Specifically, the following factual disputes exists around the exchange between Parole Officer Everly and Mrs. St. Cyre. Agent Everly testified that when he located the vehicle, he asked Mrs. St. Cyre where the gun was in the car. *See* Rec. Doc. 16-1 at 13:15-18. Agent Everly did not Mirandize Mrs. St. Cyre nor did he obtain Mrs. St. Cyre's written consent to search the vehicle. *Id.* at 47:31-46:7. Agent Everly threatened that Mrs. St. Cyre would go to jail if she did not tell him where the gun was. *Id.* at

11:15-18.  Although Agent Everly said that he did not tell Mrs. St. Cyre that he would arrest her, he acknowledges saying he "would put her in cuffs." *Id*. at 44:30-31. Agent Everly further threatened Mrs. St. Cyre that her baby would go into state custody.  *Id*. at 45:7-13 (Agent Everly "clarified" that it was not a direct threat because he told Mrs. St. Cyre "that if she goes to jail, her baby will probably go into State custody." *Id.* However, during trial, Agent Everly changed his testimony to state that he would call the State to pick up Mrs. St. Cyre's child. *See* Rec. Doc. 16-3 at 97:21-27.).

 After being threatened, Mrs. St. Cyre stated that there was a gun under the driver's seat. Rec. Doc. 16-2 at 48:13-15. Agent Everly interpreted this as consent to search the vehicle. *Id*. at 48:16-18. Mrs. St. Cyre's statement to Agent Everly about the location of the gun cannot be construed as a valid consent to search. Importantly, Agent Howell testified that he was already searching the car when Agent Everly was talking with Mrs. St. Cyre. Mrs. St. Cyre's subsequent "consent to search" is not curative of Agent Howell's entry into the vehicle without Mrs. St. Cyre's consent—and definitely without Ms. Vaughn's consent. Mrs. St. Cyre described the location of the gun after Agent Everly threatened to "throw her in jail" and further threatened that her infant would be taken away from her. This conduct—although routine for Agent Everly—was coercive and unconscionable. *Id*. at 45:7-13 ("[T]hat's something I tell them basically sometimes.")

These factual disputes were never fully considered or reviewed by the Louisiana First Circuit.  In fact, this issue was not even discussed by the last reasoned court judgement. Consequently, despite the R&R's recommendation, this matter should be reviewed by this Honorable Court, and Mr. St. Cyre's writ for habeas relief should be granted for the reasons briefed in his original application.

**B.  OBJECTION TWO 2: The Magistrate Erred in Finding That Mr. St. Cyre's Miranda Claims are Not Cognizable on Federal Habeas Review**
    **a.  Standard of Review for Claim Two**

The R&R notes that the Louisiana First Circuit Court of Appeal found "no error in the trial court's conclusion that the defendant was Mirandized before making the inculpatory statement." Rec. Doc. 35 at 16–18 (quoting *State v. St. Cyre*, 19- 0034 (La. App. 1 Cir. 12/19/19), 292 So.3d 88, 105)). While this claim was adjudicated on the merits, Mr. St. Cyre nonetheless contends that he is eligible for habeas relief under § 2254(d)(2) because the state court's adjudication of his claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The state court's findings of fact should not be presumed correct because Mr. St Cyre has rebutted the presumption by clear and convincing evidence pursuant to 28 U.S.C. § 2254 (e)(1). Further, § 2254 (d)(1) also allows this Court to review his Miranda claim because the state appellate court's decision involved an unreasonable application of clearly established Federal law.

    **b.  Objection to Factual Findings, Conclusion, and Recommendation**

The R&R incorrectly determines that Mr. St. Cyre has "offered no clear and convincing evidence to discount the factual and credibility findings made by the state courts in denying him relief [on his *Miranda* claim] and those findings are supported by the record and testimony." Rec. Doc. 35 at 31. Further, the R&R wrongly concludes that Mr. St. Cyre failed to establish that the denial of relief on this claim was contrary to or an unreasonable application of Supreme Court precedent. *Id.* at 31–32. Mr. St. Cyre respectfully objects to these findings.

A review of the record proves that R&R errs on its determination regarding this claim. As noted in Mr. St. Cyre's habeas petition and in the Reply to the State's Supplemental Response, Agent Everly did not dispute that he started a custodial interrogation of Mr. St. Cyre without

giving him a *Miranda* warning. Rec Doc. 16-2 at 16. It is not clear, however, what transpired next. According to his own testimony, Agent Everly stated that he began questioning Mr. St. Cyre, but then stopped and read him his Miranda rights after being prompted by a fellow agent who "float[ed] by the office." *Id*. Agent Everly alleges in his testimony that Mr. St. Cyre then affirmed that he understood his rights, made a statement specifically regarding the gun found in his vehicle, expressed contrition and a desire to help law enforcement. *Id*. at 17–18.

Importantly, all of this allegedly transpired before Agency Everly charged Mr. St. Cyre with parole violations related to a positive drug screen and placed him under arrest. *Id*. at 18–19. He was subsequently transported to jail. Id.  Only at this point did Mr. St. Cyre allegedly sign the Miranda form. *Id*; *see also St. Cyre*, 292 So.3d at 104.

The R&R cites *Moran v. Burbine*'s requirement that waiver of the Fifth Amendment privilege against self-incrimination must be voluntary and not the product of intimidation, coercion or deception. 475 U.S. 412, 421 (1986). The R&R does not, however, include a citation to the clearly established Federal law that "[w]hen Miranda warnings are inserted in the midst of [a] coordinated and continuing interrogation, they are likely to mislead and depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Missouri v. Seibert*, 542 U.S. 600, 613-14 (2004). As such, when a mid-interrogation warning "threatens to thwart Miranda's purpose of reducing the risk that a coerced confession would be admitted," it should be considered inadmissible. *Id.* at 617.

When a statement is a product of a custodial interrogation, the State must additionally show that the person was

> warned **prior to any questioning** that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*See Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (emphasis added).  *Miranda* warnings must be given when there is an interrogation, i.e. questioning that is likely to elicit an incriminating response.  *See Miranda*, 384 U.S. at 476-77.  Even in the absence of physical coercion, a police officer's dominance in a setting of custodial interrogation creates grave risks.  *Id.* at 451.  "Coercion is determined from the perspective of the suspect." *Illinois v. Perkins*, 496 U.S. 292, 296 (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)).

When a court determines "whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quotations omitted).  In addition, the court must examine whether the "relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes v. Fields*, 565 U.S. 499, 509 (2012).  This examination requires the court to use the following objective reasonable suspect test: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (alteration in original) (internal quotation marks and footnote omitted).  *See J.D.B. v. North Carolina*, 564 U.S. 261, 270, (2011); *Yarborough v. Alvarado*, 541 U.S. 652, 662–63 (2004); Stansbury, 511 U.S. at 323; *Berkemer v. McCarty*, 468 U.S. 420, 442 n.35 (1984).

Lastly, "when *Miranda* warnings are inserted in the midst of [a] coordinated and continuing interrogation, they are likely to mislead and depriv[e]  a defendant of knowledge

essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Missouri*, 542 U.S. at 613-14. In such circumstances, a court should consider the following facts when determining whether a midstream *Miranda* warning is sufficient:

> 1)  the completeness and detail of the questions and answers in the first round of interrogation;
> 2)  the overlapping content of the two statements;
> 3)  the timing and setting of the first and the second;
> 4)  the continuity of police personnel; and
> 5)   the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id*. at 615. When considering the foregoing conditions, when a mid-interrogation warning "threatens to thwart *Miranda*'s purpose of reducing the risk that a coerced confession would be admitted," it should be considered inadmissible. *Id*. at 617.

To meet AEDPA's clear and convincing standard, Mr. St. Cyre must give the factfinder an "abiding conviction that the truth of [his] contentions are "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (quoting C. McCormick, Law of Evidence § 320, p. 679 (1954)).  The naked admission that a portion of his statement was given pre-*Miranda*, combined with two impossibly irreconcilable versions of events meet this bar.  Consequently, despite the R&R's recommendation, this matter should be reviewed by this Honorable Court, and Mr. St. Cyre's writ for habeas relief should be granted for the reasons briefed in his original application.

**C.  OBJECTION 3: The Magistrate Improperly Found that the State Court Correctly and Reasonably Denied Mr. St. Cyre's Ineffective Assistance of Counsel Claim for Failure to Object to Inadmissible Character Evidence**

**a.  Standard of Review for Claim Three**

Mr. St. Cyre's first ineffective assistance of counsel claim was denied on the merits in state court. AEDPA's deferential standards of review apply but the state court's application of *Strickland* was "involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Trial counsel's failure first to lodge an objection to highly prejudicial propensity evidence that was firmly grounded in the rules of evidence, and then to seek a limiting instruction, meets both prongs of *Strickland*. 466 U.S. 668 (1984). Even when "afford[ing] both the state court and the defense attorney the benefit of the doubt," this is an unreasonable application of federal law. *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) (internal quotations omitted). This qualifies as an unreasonable application of *Strickland* as the state court "identifie[d] the correct governing legal principle from the Court's decisions but unreasonably applie[d] that principle to the facts of [Mr. St. Cyre's] case." *Williams*, 529 U.S. at 412-13.

**b.  Objection to Factual Findings, Conclusion and recommendations**

The R&R contends that Mr. St. Cyre's *Strickland* claim arises initially from his counsel's failure to object to evidence of prior bad acts. Rec. Doc. 35 at 60. Referencing the trial court record, the R&R contends that it is "clear … that defense counsel objected to the eliciting of the testimony and vigorously argued against the evidence the state sought to introduce." *Id.* at 60–61. However, as delineated in Mr. St. Cyre's Reply to State's Supplemental Response, his *Strickland* claim does not emanate from his trial counsel's failure to object, but from counsel's failure to ground his objection in clearly established law. More specifically, trial counsel failed to object to the cross examination of Mr. St. Cyre's wife, Chelsea St. Cyre, on the grounds that the state's character evidence failed to satisfy the factors established by *State v. Johnson*, 389 So. 2d 372, 376-77 (La. 1980). Instead, counsel insisted that Ms. St Cyre had been a fact witness. As a result of this failure, the jury heard a highly inflammatory and prejudicial description of an alleged November 2017 shooting, which included the following exchange:

> Q: Have you heard that prior to this incident, your husband was
>
> involved in a shooting in November of '17?
>
> A. Yes.
>
> Q. And when those individuals opened fire on your husband, he
>
> was actually holding your infant daughter?
>
> A. Yes.
>
> Q. And that when that happened, he dropped your daughter and
>
> retrieved a firearm from his own vehicle?
>
> A. I wasn't there when that happened.

*St. Cyre,* 292 So. 3d 88 at 108–09. The jurors also heard about Mr. St. Cyre's past marijuana use

and past possession of a firearm.

It should be noted that even if Mr. St. Cyre's trial counsel "opened the door" to inquiries

into particular prior acts by inadvertently eliciting character evidence from Chelsea St. Cyre, the

Louisiana Code of Evidence still only allows for inquiry into specific acts only as they bear upon

credibility; the description of his infant daughter's involvement strains this limit, as does

questioning about past drug use. *See* La. Code Evid. 608(C). Trial counsel failed to object on this

basis and failed to argue that the State's line of cross-examination concerned the specific trait

involved in possession of a firearm by a convicted felon, just as he failed to object based on the

guidelines set forward in *Johnson*, 389 So.2d at 376. This includes whether "there is no question

as to the fact of the subject matter of the rumor…that neither the event or conduct nor the rumor

concerning it occurred at a time too remote from the present offense…that the earlier event or

misconduct and the rumor concerned the specific trait involved in the offense for which the

accused is on trial and … that the examination will be conducted in the proper form." *See St.*

*Cyre,* 292 So. 3d at 110 (citing *Johnson,* 389 So.2d at 376). Mr. St. Cyre's trial counsel's error not only let highly prejudicial evidence reach the jury, but also failed to preserve the error for appellate review. *See St. Cyre,* 292 So. 3d at 111 ("[D]uring argument…[d]efense counsel objected only to the prosecutor's remark about the shootout. There was no objection to or any mention made by defense counsel about the infant daughter being dropped. Thus, that issue is not preserved for review.").

The Supreme Court in *Strickland v. Washington* set forth the two components of an ineffective assistance of counsel claim: First, that counsel's performance was deficient such that they did not function as the "counsel" guaranteed the Sixth Amendment; second, that the deficient performance prejudiced the defense severely enough to deprive the defendant of a fair trial. 466 U.S. 668, 687 (1984).

The R&Rnotes that this honorable Court must "afford both the state court and the defense attorney the benefit of the doubt" regarding Mr. St. Cyre's *Strickland* claim. Rec. Doc. 35 at 46 (quoting *Woods v. Etherton,* 578 U.S. 113, 117 (2016)). Further, the R&R contends that Mr. St. Cyre fails to acknowledge "that the Louisiana First Circuit Court of Appeal, in the last reasoned opinion, ultimately found on direct appeal that 'the scope of the cross-examination of Chelsea was proper,' there was no undue prejudice to St. Cyre, and that the trial court did not err in allowing the evidence. *Id.* at 61. However, this Honorable Court's application of *Strickland* is not entirely confined by state court findings when, as here, the state courts unreasonably applied federal law. It is impossible to discern a strategic rationale for trial counsel's failure to object to highly prejudicial propensity evidence on all available grounds. The use of such evidence has been carefully limited by both the Federal Rules of Evidence and the Louisiana Code of Evidence precisely because of its tendency to prejudice and confuse a jury. Trial counsel's

additional failure to seek a limiting instruction regarding Chelsea St. Cyre's testimony only underscores the lack of sound strategy, even if afforded the benefit of the doubt.

The persuasive and inflammatory nature of the impermissible propensity evidence is underscored by the fact that the Prosecution chose to revive it in his closing argument, telling the jury: "[T]his is the whole picture[:] Shoot out in front of this man's house less than three months before the date of this offense holding his infant daughter and drops her." Rec. Doc. 16-6 at 36–37. This description of events was never established by a fact witness, much less confirmed by Chelsea St. Cyre's supposed character testimony. But it was twice repeated to the jury due to trial counsel's failure.

Mr. St. Cyre respectfully contends that he has made both showings required by *Strickland* such that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687 (1984).

D.  **OBJECTION 4: The Magistrate Improperly Found that the State Court Correctly and Reasonably Denied Mr. St. Cyre's Ineffective Assistance of Counsel at Sentencing Claim**

a.  **Standard of Review for Claim Four**

Mr. St. Cyre's second ineffective assistance of counsel claim was also denied on the merits in state court. AEDPA's deferential standards of review apply but the state court's application of *Strickland* in this matter is also "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Mr. St. Cyre respectfully contends that he is entitled to relief.

**b. Objection to Factual Findings, Conclusion and recommendations**

In dismissing Mr. St. Cyre's second *Strickland* claim, the R&R contends that he "presented no evidence as to what investigative steps his trial counsel actually took or failed to take prior to and during plea negotiations." Rec. Doc. 35 at 65. Further, it cites the trial court's findings that "the record does not reflect all of the conversations that obviously occurred between the State and Tonry" prior to the habitual offender sentencing. *Id.* (quoting Rec. Doc. 16-6 at 1150). However, this is not supported by the factual record. Mr. St. Cyre's habeas petition notes that trial counsel's utter failure to conduct any kind of mitigation investigation is substantiated both by Mr. Tonry's file and by letters from Mr. St. Cyre's adult son Ronald Carter, his wife Chelsea St. Cyre, his brother Terrell St. Cyre, his aunt Vernell Miller, his cousin Lakeitcha Jackson and her husband Roy Jackson, and his cousin Shawanda Vaughn. Rec. Doc. 11 at 18. All of these close family members attest to the fact that they were all available to testify, but trial counsel never contacted them. *Id.*

The Fifth Circuit "recognize[s] that that [i]neffectiveness is generally clear in the context of a complete failure to investigate because counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such a decision could be made." *Anderson v. Johnson*, 338 F.3d 382, 391 (5th Cir. 2003) (emphasis added) (internal quotations omitted). The R&R includes the trial court's observation that the "record does not contain any reference to mitigation evidence or a motion for reconsideration." Rec. Doc. 35 at 63. Counsel's failure to function as guaranteed by the Sixth Amendment is only underscored by the fact that the Habitual Offender Bill of information "set[] forth defendant's lengthy criminal history," as noted by the Magistrate. Rec. Doc. 35 at 63 (citing Rec. Doc. 16-6). This made clear the Prosecution intended to leverage his history of felony

convictions, leaving "no question that defense counsel were on notice" of the need for mitigating evidence. *Rompilla v. Beard*, 545 U.S. 374 (2005). This clearly meets the first prong of *Strickland*.

The R&R also contends that Mr. St. Cyre's claim does not meet the second prong of *Strickland* as it "fails to show prejudice resulting from his counsel's failure to present mitigating evidence at the multiple bill sentencing." Rec. Doc. 35 at 65. The magistrate describes the plea agreement negotiated by defense counsel as "very favorable to St. Cyre," given that he faced a life sentence as a quadruple multiple offender and a maximum of forty years as a second felony offender. *Id.* It is clear however, from the totality of the circumstances, that serving a thirty-year sentence for a non-violent crime is constitutionally excessive. A Louisiana sentence is excessive if it is "grossly disproportionate to the offense or imposes needless and purposeless pain and suffering." citing *State v. Castillo*, 13-552 (La. App. 5 Cir. 10/29/14), 167 So. 3d 624, 648 (citing *State v. Smith*, 01–2574 (La.1/14/03), 839 So.2d 1, 4). A grossly disproportionate sentence "shocks the sense of justice" when considered in light of the harm done to society. *Id.* (citing *State v. Lawson*, 04–334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622).

The trial court vacated Mr. St. Cyre's fifteen-year sentence and sentenced him to thirty years without the benefit of parole, probation or suspension of sentence.  However, had sentencing counsel provided effective assistance it is more likely than not that the outcome of Mr. St. Cyre's sentencing hearing would have been different.  Sentencing counsel was without any mitigation evidence to properly conduct plea negotiations and/or contest the equity and constitutionality of the plea offer to the trial court judge.  The evidence presented herein demonstrates that this Honorable Court should reject the R&R's factual and legal findings and grant Mr. St. Cyre habeas relief on this claim.

E.  **OBJECTION 5: The Magistrate Improperly Determined that Mr. St. Cyre Failed to Establish That the State Court's Denial of Relief was Contrary to or an Unreasonable Application of Federal Law.**

a.  **Standard of Review for Claim Five**

The last reasoned state court judgment regarding the state trial court judge's failure to inform Mr. St. Cyre of his rights under Louisiana law simply stated that "the Court informed the Defendant of all of his rights vis-a-vis that Bill." *See* Rec. Doc. 16-7 at 24. This one sentence analysis demonstrates that the state trial court failed to conduct any meaningful constitutional analysis about Mr. St. Cyre's claim.

The R&R fails to discuss the last reasoned judgment in state court, and appears to conduct an assessment under the traditional AEDPA deference standard. However, because the last state court judgment is so deficient, this Honorable Court should review *de novo* Mr. St. Cyre's claim.

b.  **Objection to Factual Findings, Conclusion and Recommendations**

Mr. St. Cyre objects to the factual finding, conclusion and recommendation provided in the R&R concerning this claim. The Magistrate correctly identifies that "advice about one's constitutional rights has "only a limited application to multiple offender proceedings . . . [and that a] defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes." Rec. Doc. 35 at 34-5 (citations omitted).

However, the R&R incorrectly concludes that Mr. St. Cyre was "aware of the maximum term of imprisonment" he faced as a result of a habitual offender enhancement. In fact, when reviewing Mr. St. Cyre's habitual offender arraignment and sentencing proceeding it is

abundantly clear that AT NO POINT does the state trial court judge inform Mr. St. Cyre about the maximum term of imprisonment that he faces. *See* Rec. Doc. 16-3 at 726-28, 732-34.

The state court record is clear that Mr. St. Cyre's due process rights during his habitual offender proceeding were violated. In turn, the record is clear that his plea to the habitual offender bill was NOT knowing nor voluntary. Consequently, this Honorable Court should disregard the R&R's recommendation on this claim, and instead grant Mr. St. Cyre habeas relief by way of vacating his sentence.

**F.  OBJECTION 6: The Magistrate Improperly Determined that the State Court Finding That There Was No Ex Parte Communication With the Jury Was A Reasonable Determination of the Facts and Was Not an Unreasonable Application of Clearly Established Supreme Court Law.**

As previously indicated, the state court found that no ex parte communication between the trial court and the jury occurred. AEDPA requires this Court to presume the finding to be correct and St. Cyre bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In objection to the R&R's finding, Mr. St. Cyre does carry his burden and this Court should grant his habeas claim.

Notably, the R&R states that AEDPA deference should be extended to credibility determinations made by the state courts. Rec. Doc. 35 at 41. Ironically, the R&R fails to acknowledge that the state trial court's that the state trial court was making a credibility determination about his very own behavior and alleged communications.

This clear conflict mandates that the state trial court should have recused itself from making any kind of credibility decisions in this case. The entirety of this claim turns on whether or not the state trial court had an ex-parte communication, yet the state trial court judge is left to

review his own behavior.  He is actually a witness to this claim, and thus his review of this particular issue should not be provided any kind of deference.

Again, the R&R properly identifies a portion of the legal standard that should be considered with this type of claim.  *Id*. However, R&R's reference to *Rushen* is minimal and incomplete despite the fact that this Supreme Court case is controlling federal precedent.  For instance the R&R states that there "is no automatic presumption of harm, however, just because an ex parte communication occurred. *Rushen v. Spain*, 464 U.S. 114, 133 (1983)." *Id*.  However, the R&R's analysis stops there.   *Rushen* continues to hold that "[w]hen an ex parte communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties." *Id*. at 119. In his opinion concurring with the per curiam majority, Justice Stevens stated: "I think it quite clear that the mere occurrence of an ex parte conversation between a trial judge and a juror does <u>not</u> constitute a deprivation of any constitutional right. The defense has <u>no</u> constitutional right to be present at every interaction between a judge and a juror, <u>nor is there a constitutional right to have a court reporter transcribe every such communication</u>.: *Id*. at 125-26 (emphasis added). Instead, he noted that the only "error of constitutional dimension" that might arise from such a communication might be whether the defendant "was denied his core due process right to notice and an opportunity to be heard in a meaningful manner and at a meaningful time" if the communication raised a question about a juror's impartiality. *Id*. at 126.

The record in this case shows that two jurors remember a significant ex-parte conversation with the state trial court judge about adjudicating Mr. St. Cyre's allegations.  The record also shows that Mr. St. Cyre's counsel did not know about these communications and that he and Mr. St. Cyre had no opportunity to be heard when these violations occurred.  Lastly, it is

clear that the same trial court judge who had ex parte communications with the jurors, is the same judge adjudicating his own behavior. This is not how the state post-conviction process should work. Consequently, this Honorable Court should grant Mr. St. Cyre's habeas application.

## CONCLUSION

For all of the foregoing reasons cited herein, in Mr. St. Cyre's Reply Memorandum and Amended Habeas Complaint, this Honorable Court should grant his petition, vacate his conviction and sentence, and remand this matter to the state trial court for him to be retried within a reasonable time frame.

Respectfully Submitted,

**_Emily H. Posner_**
**Emily Posner (**La. Bar No. 35284)
4930 Washington Avenue
Suite D
New Orleans, Louisiana 70125
Email: ep@emilyposnerlaw.com
